# RIO GRANDE RAILROAD COMPANY *v.* VINET.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 114.   Argued November 15, 1889. — Decided December 23, 1889.

The evidence in this case fails to establish any fraud in the making of the notes and mortgage which are the subject of controversy, or in the use afterwards made of the notes.

In equity.  The case is stated in the opinion.

*Mr. George L. Bright* for appellant.

*Mr. J. D. Rouse* for appellees.  *Mr. William Grant* was with him on the brief.

Mr. Justice MILLER delivered the opinion of the court.

The appellant, which was plaintiff below, obtained in the Circuit Court for the Eastern District of Louisiana on January 5, 1885, a judgment against the partnership firm of Gomila & Co. and against Anthony J. Gomila and Larned Torrey, who constituted the partnership, for the sum of $26,731.97.  It caused an execution to be issued upon the judgment, and had it levied upon a house, and the grounds belonging to it, in the city of New Orleans, a description of which is set forth in the bill filed in this case.  It was discovered that there existed a mortgage upon this property for the sum of $18,000, made by A. J. Gomila, and the railroad company brought the present suit by way of a bill in chancery to remove this incumbrance, as an obstruction to the successful exercise of its right to sell the property for the payment of its debt.  The action, commenced in the Civil District Court for the Parish of Orleans, was afterwards removed by Gomila into the Circuit Court of the United States, and the plaintiff there filed a new bill in equity substantially the same as the petition filed in the state court.

This bill, after reciting the judgment in favor of the railroad company, already mentioned, and the levy of the execution under it on the property described, proceeds to state: "That there is inscribed on the books of the recorder of mortgages for the Parish of Orleans, against the name of Anthony J. Gomila and against said property, an inscription of a mortgage made by said Anthony J. Gomila in favor of the commercial firm of Gomila & Co. by act before Samuel Flower, a notary public, dated the 8th of February, 1884, to secure the sum of $18,000."  According to the bill, this act recited an indebtedness by A. J. Gomila to the firm of Gomila & Co. for

that much money loaned and advanced to him on that day, and that for said $18,000 he had made his four promissory notes to the order of and endorsed by himself. Three of these notes were for $5000 each, and one for $3000. The $5000 notes were payable in one, two and three years after date respectively, and the $3000 note was payable three years after date.

The bill then alleges that " said mortgage is fictitious, and is a fraud committed by said A. J. Gomila to cover his property and to prevent the seizure and sale thereof; that it is not true, as stated in said act of mortgage, that on the 8th of February, 1884, the said firm of Gomila & Co. loaned and advanced to A. J. Gomila the sum of $18,000, or any other sum of money; and your petitioner alleges that by reason of said fraud the aforesaid notes, amounting in all to $18,000, are null and void; that after they were made and received by Larned Torrey, who accepted the act of mortgage, they were surrendered to A. J. Gomila, and thereby were cancelled, and they have been ever since in his custody or under his control, or in the custody and control of some confederate, whom, when discovered, your petitioner prays leave to make a party hereto; " and the prayer of the bill is that these notes be cancelled and annulled, and that Gomila be required to surrender them up, and for such further relief as the nature of the case may require.

Supplemental and amended bills were filed making defendants to the suit J. Ward Gurley, Jr., and C. D. Barker, upon the allegation that they claim to be the owners of the notes, and assert the sufficiency and validity of the mortgage by which they are pretended to be secured, and they are required to answer the allegations of the original bill and to set forth the nature of their claim. A. J. Gomila answered the bill, and to special interrogatories propounded to him in it he answered under oath as follows:

" To the first of said interrogatories, which reads as follows, viz. :

" To whom did you deliver the notes described in the original bill on file, and when did you do so? Give his full name and address.

" He answers, viz. :

" Ans. The notes were all delivered to Larned Torrey, the other member of the firm of Gomila & Co., when they were made or executed, Feb'y 8th, 1884.

" To the second of said interrogatories, which reads as follows, viz. :

" In whose possession have said notes been at all and any time up to the present time ?

" He answers, viz. :

" Ans. The said notes were immediately thereafter delivered to J. Ward Gurley, Jr., of this city, from whom Gomila & Co. received the following sums of cash, viz., on 6th Feb'y, 1884 ($3496.50) three thousand four hundred and ninety-six and 50-100 dollars; on Feb'y 11th, 1884 ($1498.50) one thousand four hundred and ninety-eight and 50-100 dollars; on 20th Feb'y, 1884 ($1000) one thousand dollars, besides some city bonds at various dates just before and subsequently, other small sums of money for costs in different suits, etc., all of which is still due said Gurley, with interest thereon; that $5000 of said sums of money was obtained from said Gurley for the purpose, and used to pay the balance of the purchase price of the property in question to the Hibernia Ins. Co.

" That some months after the said notes were so delivered to said Gurley two of them — viz., the note for $5000, due in two years after its date, and the note for $5000, due in three years after date — were withdrawn from the said Gurley by Gomila & Co. through the said Torrey, and pledged on the 21st Aug., 1884, with and to the Teutonia Ins. Co. of this city, to secure a loan then made by said Ins. Co. to Gomila & Co. of $5000 in cash; that on the 3d Sept., 1884, the said loan was renewed with said Ins. Co., and on the 10th Oct., 1884, the said loan of $5000 was renewed in the State Nat'l Bank of this city, and said two mortgage notes were withdrawn by Gomila & Co., through the said Torrey, from said Ins. Co. and pledged with and to the State Nat'l Bank to secure said loan.

" Subsequently Gomila & Co., through said Torrey, withdrew said two notes from the State Nat'l Bank and placed them with C. D. Barker of this city, on or about 3d November,

1884, from whom said firm of Gomila & Co. received, through said Torrey, the sum of two thousand dollars in cash November 3d, 1884, and the additional sum of one thousand dollars in cash Nov. 5th, 1884, and the additional sum of one thousand dollars in cash Nov. 7th, 1884.

"And, so far as deponent knows, the said last two mentioned notes are still held by said Barker, and the other two notes, one for $5000, due in one year after its date, and one for $3000, due in three years after its date, are now, and have always been, held by said Gurley since they were first delivered to him as aforesaid.

"To the 3d of said interrogatories, which reads as follows, viz.:

"Who is now the holder of said notes? Give his name and address.

"He answered, viz.:

"Ans. This interrogatory is answered by the answer just given above.

"A. J. Gomila."

Gurley answered the bill, under oath, setting forth the matter pretty much as Gomila's answer does, and averring that the notes and mortgage were true, real and *bona fide*, and that those which he owned are not now and have not at any time since the issue thereof been under the control or in the possession of A. J. Gomila, and that he took them for money advanced to the firm of Gomila & Co. before they were due; and he sets forth the amount of his advance with precision and particularity, showing that $5000 of the money which he advanced went to pay the purchase price of the house and lot mentioned in the mortgage; and he says that said notes were acquired by him for a full and valuable consideration in due course of business, and that they were issued in the interest and for the benefit of Gomila & Co. and their creditors, to enable them to continue business, and that the said notes and the full amount of them are still justly and fully due to the defendant.

Caleb D. Barker, the other defendant, in whose possession

some of the notes were, files an answer also under oath, in which he shows that Torrey, as a member of the firm of Gomila & Co., sold him two of the notes for $5000 before they were due, pledging them to secure a loan, in November, 1884, and they have been in his actual possession ever since, except for a short time when Torrey received possession of them to see if he could not raise the money on them to pay the existing loan of Barker. Failing in this, Torrey returned the notes to Barker, with an agreement that if the money was not paid on the 8th of January, 1885, they should become the property of Barker; that the loan was not repaid and never has been, and the said notes are now the property of Barker; and he avers that the notes were negotiable paper taken by him before maturity in good faith, for valuable consideration in due course of business, without any intention to defraud the creditors of Gomila or Gomila & Co.

Replications were filed which made issue on these averments, and testimony was taken. Gomila died, and the suit was revived against his wife and one Wiltz, who had been made dative testamentary executor of Gomila after which it was heard and decided by the court below rendering the decree from which this appeal is taken. That court finds that the transaction by which these notes and the mortgage were made and issued and came to the hands of Gurley and of Barker was in every respect an honest transaction; that the mortgage is a valid mortgage; and that the sums secured by it to the defendants Gurley and Barker are valid liens upon the property prior to that of the complainant; and on these grounds it dismissed the bill. Wiltz having died, the present appellee, as his successor, has been substituted in this court.

We concur entirely with the view of the evidence taken by the Circuit Court. There is nothing but the barest suspicion of fraud or unfairness in the making of these notes and mortgage and in the use afterwards made of the notes. Mr. Gomila, in his efforts to save the credit of his firm, consented that the house and grounds in which he lived might be mortgaged to raise money for that purpose. He accordingly made the four notes and the mortgage to secure them, covering

that property. Five thousand dollars of the money first raised on these notes went immediately to pay a prior incumbrance in the nature of a vendor's lien on the property mortgaged. The remaining notes were handed to Mr. Torrey, the partner of Gomila in the firm of Gomila & Co., and he raised the sums due to Gurley by delivering to him part of the notes. He also raised money from certain banks by delivering some of the notes as security for the indebtedness of Gomila & Co. These notes he redeemed, and ultimately turned them over to Barker as security for the loans advanced by him for the benefit of the firm of Gomila & Co. It is distinctly denied by A. J. Gomila that, after he delivered these notes to Torrey to be used for the benefit of Gomila & Co., they ever came back to his possession or under his personal control, and no evidence of that fact is produced, nor are we aware that, if such had been the case, it would impair the rights of their present holders, who received them in the regular course of business, paying a valuable consideration for them before their maturity. It is idle to pursue the subject further. A recital in this opinion of the testimony of each witness examined could lead to no useful results. That Mr. Gomila covered his homestead with a mortgage, which was used to raise money by the firm of which he was a member to pay its debts, is surely not a transaction that should be branded as a fraud.

The decree of the Circuit Court is

*Affirmed.*