### MORRIS et al. v. LINDAUER et al.

(Circuit Court of Appeals, Sixth Circuit. February 16, 1893.)

#### No. 71.

1. FEDERAL COURTS — JURISDICTION — STATE STATUTES—FRAUDULENT ASSIGNMENTS.

The fact that the Michigan statute vests in the circuit court of that state the supervision of trusts created by assignments for the benefit of creditors does not exclude the jurisdiction of the federal circuit court, in cases of diverse citizenship, to entertain a suit to set aside a mortgage made in contemplation of the assignment, and covering all the assigned property, as in fraud of creditors. Ball v. Tompkins, 41 Fed. Rep. 486, applied.

2. SAME—DIVERSE CITIZENSHIP—TRUSTS.

Where a trustee is a party to an action in a federal court, brought under the diverse citizenship clause of the federal constitution, the citizenship of the trustee, and not that of the beneficiaries under the trust, determines the jurisdiction. Knapp v. Railroad Co., 20 Wall. 124, followed.

3. FRAUDULENT CONVEYANCES—EVIDENCE.

S. began business in Michigan in August, 1888, with goods of the value of $7,500. In the following spring he purchased more goods to the amount of $4,500. April 19, 1889, he executed a mortgage on the goods in favor of his brother and others, and on April 22, 1889, executed a general assignment. At the time of the assignment there were only left goods to the value of $5,000. No other disposition of the rest of the goods was shown. Shortly before making the assignment S. bought other goods, and just as the obligations therefor were falling due he borrowed a large sum from a bank, and then assigned. The brother had at various times and places made contradictory statements as to the amount S. owed him, and knew all about S.'s affairs, and had gone to various persons with S. for the purpose of getting S. credit. *Held*, that the mortgage was a fraud upon the general creditors of S., and was void as to the brother.

4. SAME—KNOWLEDGE OF GRANTEE—INNOCENT BENEFICIARY.

Where a mortgage is given to one person for the purpose of securing debts due to himself and others, with intent on the part of the mortgagor to defraud other creditors, it is valid as to an innocent beneficiary whose debt is an honest one, although the mortgagee himself is a party to the fraud.

5. SAME—KNOWLEDGE OF AGENT.

But such a mortgage is void as to one who, though innocent himself, procured the security through an agent who had knowledge of the fraud.

Appeal from the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

In Equity. Bill to set aside a mortgage, brought by Max Lindauer, Adolph Lindauer, and Solomon Michelbacher against Victor Schoenfeld, Louis E. Morris, and Jacob Aarons. The circuit court entered a decree for complainants. Respondents appeal. Affirmed.

Victor Schoenfeld, a retail dry goods merchant, resident and doing business in Manistee, Mich., purchased goods of Lindauer & Co., a Milwaukee firm, composed of Max Lindauer and Adolph Lindauer, citizens of Wisconsin, and Solomon Michelbacher, a citizen of New York. Schoenfeld was indebted for such purchases to the amount of $3,527, most of which indebtedness was incurred after March 16th. He was also indebted to the First National Bank of Manistee in the sum of $1,000 for money borrowed upon his promise to forthwith secure the loan by mortgage. This loan was made on the day next mentioned. On April 19th Schoenfeld executed and delivered to Louis E. Morris, as trustee, in favor of the First National Bank of Manistee, J. R. Torbe, Julius Schoenfeld, and Mayer Bernhard, of Milwaukee, a trust mortgage on all the mortgagor's property, purporting to be in consideration of $5,768.75, and this mortgage was filed in the office of the clerk of the city of Manistee, April 19, 1889, at 5 o'clock P. M. On April 22d, Schoenfeld executed a general assignment of all his property for the benefit of his creditors in favor of Jacob Aarons as assignee, and filed it in the office of the county clerk. The assignee took possession and began selling the stock.

The following opinion was delivered in the circuit court by SEVERENS, J.:

"The defendants in this case renewed at the hearing their objection to the jurisdiction of the court, that by reason of the making and filing of the assignment in the office of the clerk of Manistee county by the defendant Victor Schoenfeld the circuit court in chancery for that county became possessed of the subject-matter of the present controversy, and that this possession of the subject-matter, under the jurisdiction conferred upon that court by the statute of Michigan, was exclusive of the right of any other court to intervene, and disturb the exercise of the powers of the state court. The general principle appealed to in support of this proposition is familiar and well established. This court cannot disturb the actual possession of a thing taken into possession by the state court, but it has jurisdiction to ascertain and declare, in a case where the requisite citizenship of the parties exists, the rights of the parties in the subject matter. This question was fully considered here in the recent case of Ball v. Tompkins, 41 Fed. Rep. 486, and I do not think it necessary to restate the grounds upon which the court is of the opinion that the objection here urged is untenable. It is proper, however, to say that it cannot be admitted that the legislature of the state intended such consequences to follow from their vesting the supervision of the trusts created by assignments in the courts of the state, for any attempt to do this would be futile in the face of the constitutional provision giving the citizen of another state the right to invoke the action of the federal courts in his behalf against a wrong of which he may complain. The objection that some of the beneficiaries in the mortgage are citizens of the same state as the complainants is not tenable. The mortgagee, who is their trustee, represents them, and it is his, and not their, citizenship which is considered. Knapp v. Railroad Co., 20 Wall. 124.

"Upon the merits of the case the first question presented is whether the chattel mortgage of April 19, 1889, should be deemed and taken as made in contemplation of the assignment, which was executed three days later, according to its date, and therefore to be treated as part of one scheme with it. There are several indications that the mortgagor intended, when he gave the mortgage, to follow it up with an assignment,—not absolutely decisive, it is true, but tending in the direction of showing that all was intended to be. and was done substantially as, one transaction. The same persons witnessed both instruments. No circumstance occurred after giving the mortgage for making the assignment. There does not seem to have been any pressure brought to bear upon the mortgagor, and no fresh motive appears; and there are some other facts indicating the way to the same conclusion. But it is necessary, in order to invalidate the mortgage on this ground, that the mortgagees should have had notice of the mortgagor's intention; and for the purpose of testing the question whether such notice was had I think that, under the circumstances of the case, the inquiry must be directed to the beneficiaries of the mortgage, and not to the nominal party. While I should not have much difficulty in regard to the other parties who were active in procuring the mortgage, it does not appear

to me sufficiently proven that the bank, which is one of the parties secured thereby, had notice that an assignment was expected to follow, and, it being innocent of any intended fraud, I think the mortgage is valid in so far as the indebtedness to the bank is concerned.

"But I think the facts were such in regard to the other parties benefited by the mortgage that it ought not to stand, and should be held void as against creditors, under the statutes relating to fraudulent conveyances. The testimony of the persons engaged in the transaction presents a contradictory mass, from which it is impossible to gather anything with confidence. Especially is this so with reference to the testimony of the Schoenfelds. The alternative is to deduce the moral probabilities from the facts about which there is no dispute. All the principal features in the case point to a conclusion irreconcilable with an honest purpose in preparing for and making the mortgage. It appears that in August, 1888, Victor Schoenfeld took to Manistee and started in trade with goods of the value of about $7,500. It does not appear whether he purchased any more until spring, but, assuming that he did not, he then purchased more; the additional purchases amounting to about $4,500. It thus appears that he had in all at his store in Manistee goods of the value of $13,000. Of these there remained, at the time of the assignment, only $5,000 or $6,000 worth. As no other disposition of the rest is shown, it is right to assume that they were sold out at retail, and should have brought, with the usual profit on such trade, of say twenty per cent., as much as $9,000. What has become of all these goods, or their proceeds, if sold? No answer is given by the testimony. Another circumstance consists of the fact that just before the failure, during a very short lapse of time, Victor Schoenfeld suddenly inflated his stock of merchandise by purchases on credit. This inflation was, relatively to his former stock, quite large; and just as his obligations for this stock newly bought were falling due, and before any one was pressing him, he made this mortgage. In my opinion, he did not expect to pay for them when he bought these goods just before his failure, but was planning to make as large an addition as he could, and with the whole stock cover his brother's and particular friends' debts, and cover in for himself as much as he could. When matters were ripe he helped himself by a further loan from the bank, which he put in his pocket. He then let the shell go to the general creditors. No other reasonable construction can be put upon his actions. And the proof tends strongly to show that his brother, Julius, was a party to that scheme, or at least was cognizant of it. It is not likely that he was ignorant of the situation in general of the brother, in whose affairs he had so much interest. He must have known of the large increase of the stock. His coming suddenly to Manistee, with a lawyer, in the very nick of time, before the creditors who had sold the new goods would be pressing for their dues, shows concert of action.

"Another feature is presented by the proof that, although Julius is secured in this mortgage for the sum of $3,633.75 for a debt alleged to be due him on the purchase of some of his brother's original stock, yet it appears that a year before, when he was representing to the complainants, for the purpose of extending credit, the amount of his assets, he said that $1,800 was the amount due from Victor. This is sought to be explained by showing that it was only accounted worth fifty cents on the dollar. But there was no apparent reason existing then why the brother's debt should have been discounted so much, and, if that was done, it seems singular that neither to Kann nor to Lindauer should have been dropped any suggestion that the $1,800 was the result of an estimate of an indebtedness twice as large. Victor himself told Lindauer in the early spring or late winter before the failure that his indebtedness was in fact but $900. Taken altogether, the evidence satisfies me that no such sum was due to Julius as is represented in the mortgage, and that it was stuffed for the purpose of carrying something by for the mortgagor's future use.

"And there is another fact. It is disclosed that at the assignee's sale a friend appears, who buys in the stock of goods. There has never been any permanent change of possession of them, but Victor Schoenfeld has had them, and continued his business with them upon an agreement with the buyer to pay him the purchase price and a certain sum for his profit or trouble. It appears

that, when the testimony was taken, (July, 1891,) the whole amount going from Victor to this friend was only about $1,600, including the $500 so-called 'profit.' How it should happen that the business should have been barren before and prosperous after the failure does not appear.

"The evidence seems to show that the indebtedness to Torbe, as well as that to Bernhard, mentioned in the mortgage, was actual, and there is no evidence to show that they personally participated in any fraud. But their agent and procurator in the obtaining the security did have notice of it, if he was not an active participant therein, and the notice he had must be imputed to those parties.

"The result is that the mortgage is held valid as to the bank and void as to the rest. The fund in the hands of the assignee, Aarons, should be applied in payment of the debt to the bank, and the balance should be distributed among the general creditors who come in and prove their claims; and such will be the decree of the court."

E. E. Benedict, for appellants.

Smiley, Smith & Stevens, for appellees.

Before JACKSON and TAFT, Circuit Judges, and BARR, District Judge.

PER CURIAM. The decree of the court below in this case is clearly correct for the reasons stated in the opinion of said court, which is made a part of the record. The facts and circumstances of the case as disclosed by the testimony fully establish the conclusion reached by the lower court. We do not deem it necessary to review the testimony in detail. It has been carefully examined and considered, and fully sustains the findings on which the decree was rested. The decree is affirmed, and the costs of the appeal will be taxed against the appellant Louis E. Morris, trustee. The cause will be remanded, with instructions to the lower court to proceed with the execution of its decree.