ROTHSCHILD et al. v. HASBROUCK et al.

(Circuit Court, S. D. Iowa, C. D. December 31, 1894.)

No. 2,324.

1. ASSIGNMENT FOR CREDITORS—CUSTODIA LEGIS.
    Property in the hands of an assignee for the benefit of creditors, under a general assignment, who has filed his bond and inventory in a state court, advertised for creditors, etc., pursuant to the Iowa statutes relative to the administration of such trusts, is not in custodia legis, so as to exclude a federal court from acting with reference thereto, or as to the validity of the assignment.

2. ABATEMENT—ANOTHER ACTION PENDING.
    It is not a good plea in abatement to a bill in equity seeking, in aid of an attachment in an action at law, to set aside, as fraudulent, an assignment for the benefit of creditors, that the same issue—as to the validity of the assignment—is raised by a reply to the answer of the garnishee in the action at law, since the validity of the assignment could not be so, collaterally, attacked.

This was a suit by Emanuel Rothschild and others against J. J. Hasbrouck, M. O. Barnes, and others to set aside certain conveyances, as in fraud of creditors. Defendant Barnes filed two pleas in abatement, to which plaintiffs except.

Cummins & Wright, for plaintiffs.
Park & Odell, for defendants.

WOOLSON, District Judge. The bill herein avers that plaintiffs duly recovered judgment in this court, by action at law, against defendant Hasbrouck, and that in said action defendant M. O. Barnes was duly garnished as a debtor of said Hasbrouck; that said Barnes filed his answer as such garnishee, showing in his possession, realized from sale of goods, etc., owned by said Hasbrouck, an amount exceeding plaintiffs' said judgment; that in October, 1893, Hasbrouck, then a merchant at Humeston, Iowa, with intent to delay and defraud his creditors, and as parts of one and the same transaction, and knowing himself to be insolvent, and with intent to give unlawful preference to three certain creditors (who are made parties defendant to this bill), executed three certain chattel mortgages on his stock of

goods to said creditors, and immediately thereafter, and also as part of said transaction, executed to defendant Barnes a pretended deed of assignment of all his property for the benefit of his creditors, said mortgagees then knowing of said unlawful and fraudulent intent on the part of said Hasbrouck, and participating therein; that said conveyances are fraudulent and void under the statutes of the state of Iowa. Decree is asked declaring said conveyances void, and directing said Barnes to pay out of the said funds in his hands an amount sufficient to discharge plaintiffs' said judgment. Defendant Barnes files his pleas in abatement, averring (1) that in October, 1893, defendant Hasbrouck executed to said Barnes a general assignment for the benefit of his creditors, under the laws of the state of Iowa; that said Barnes at once duly qualified as such assignee, and filed with the district court of Wayne county, Iowa, his bond and inventory, duly gave notice thereof to all creditors, including plaintiffs, and, under the order and direction of said Wayne county court, disposed of said property, and filed in said court a list of all creditors who had filed their claims, and now has in his hands the funds remaining after paying preferred creditors and expenses, subject to the order and direction of said Wayne district court; that said court obtained and has jurisdiction over said defendant as such assignee, and over the said funds in his hands, and said proceedings are pending and undisposed of in said Wayne district court. (2) For further plea, said defendant states that at an action at law pending in this court, and undisposed of, wherein plaintiffs herein are plaintiffs and said Hasbrouck is defendant, this defendant was garnished as a supposed debtor of said Hasbrouck, and there answered, setting up the above-stated facts with reference to said assignment and this defendant's proceedings thereunder, and the pendency thereof in said Wayne district court; and thereupon, and before filing this bill of complaint, plaintiffs herein filed their reply to said answer of this defendant as aforesaid, controverting the same, and asking therein the same relief they herein ask, and same is yet pending in said action.

1. The first point raised by the pleading of said Barnes is as to whether property in the possession of an assignee under a general assignment for the benefit of creditors is, in the state of Iowa, in custodia legis, so that this court cannot act with reference thereto, or as to the validity of said assignment. It is conceded that, if said property is thus in possession of an officer of the state court,—has been drawn within the dominion of said court,—this court ought not to disturb, and would be powerless if it attempted to disturb, the possession of such property. This proposition received extended consideration, and most clear and forcible presentation and application, in Senior v. Pierce, 31 Fed. 625, in an opinion written by Judge Love, and concurred in by Judges Brewer and Shiras. If an assignee, carrying into operation within this state a general assignment for the benefit of creditors, is, within the recognized definition of the term as used in this respect, an "officer" of the court wherein he files his bond, and to whom he makes his reports, then

the property in his hands as such assignee is beyond the power of this court, because the same is within the dominion of, and undisposed of by, the state court; and, as to the funds in the hands of such garnishee, it would seem that the plea must be sustained. The question as to whether such an assignee, in whatever state he may be acting, is an officer of that court which has supervision of his acts, has not met with uniformity of answer. To a considerable degree, this contrariety of views may be explained by the differing provisions of statutory enactment in the different states regarding the relation which such assignee sustains to the court to whom his reports are made, and whose direction he follows in the performance of his duties. That receivers appointed by the direct order of the court, and executors and administrators receiving their appointment from the court, are officers of the courts whose appointments they bear, so far as regards the question now under consideration, has passed beyond the point of doubt, and is settled by the decisions of all the courts to which counsel have called our attention. But the assignee, in Iowa, does not receive his appointment from the court; and while, under the statutes of this state, he is subject to the orders of the state court, and may even be removed by that court for causes provided in the state statutes, yet his appointment is wholly the voluntary act of the assignor. The debtor cannot be compelled to make the assignment. Nor can the state court, by any order or decree, obtain control over or possession of the debtor's property, and place it in the hands of such assignee. On the principle that the deed of assignment creates a trust for the creditors of the insolvent debtor, and that the assignee is the trustee thereof, it is claimed that courts of chancery may rightfully assume and exercise that supervisory control and direction which said courts possess over trusts generally, except as to any matters wherein the statutes of the state have declared the manner of the performance by the assignee in the execution of his duties. In Adler v. Ecker, 2 Fed. 126, Judge Nelson has considered the question now under consideration; and in a subsequent case (Lapp v. Van Norman, 19 Fed. 406) the same learned judge gave further examination to the question, and reached the same conclusion,—that the actual possession by the assignee, under such general assignment, of property of his assignor, is not custodia legis. The first decision was rendered before the enactment of the Minnesota statute as to insolvency proceedings, while the later case was subsequent to such enactment. In Lapp v. Van Norman, he says:

It is claimed that the property in the possession of the assignee is in custodia legis, and not subject to seizure by writ of attachment. I do not agree to this. The statute of Minnesota (March, 1881) did not validate all assignments purporting to be made in pursuance thereof, and forbid a judicial investigation; and while I concede that an attachment would not hold the property to satisfy a judgment against defendants unless the assignment is fraudulent and void against the plaintiffs, yet, under the law, the property is not in custodia legis, so as to exempt it from seizure. This instrument is the source of title in the assignee, and its execution is the voluntary act of the debtors, and not a proceeding instituted by law against them.

Lehman v. Rosengarten, 23 Fed. 642, arose in the Eastern district of Michigan, and was decided by Judge Brown, now a justice of the supreme court of the United States. The plea in abatement squarely presented the question we are now considering, and was heard on demurrer to such plea. The opinion presents an elaborate analysis of the statute of Michigan, which shows that statute to be in the main identical with the statute obtaining in this state. And the conclusion is reached that property in the hands of such assignee is not in custodia legis. Counsel for defendant have cited the court to but one federal decision which is claimed to hold to the contrary, —the case of Cleveland Rolling-Mill Co. v. Joliet Enterprise Co., 53 Fed. 683. But it should be noticed, that, while the court denied the power of the federal court to interfere with the property described in the bill, the opinion of Judge Gresham expressly states that the sheriff of the Illinois state court had levied on such property under various writs in his hands. The bill sought to restrain the sheriff from selling under his levies, and that the assignee, under state law, be required to deliver to the receiver to be appointed by the federal court, etc. So that, while the opinion indicates the view of the court on the point now under consideration, the decision is abundantly sustained on the other grounds stated, and is not a decision as to this point. Morris v. Lindauer, 4 C. C. A. 162, 54 Fed. 23, is another case arising in Michigan. The bill was filed to set aside a mortgage given to secure certain creditors by an insolvent, who soon thereafter executed a general assignment for the benefit of creditors. The bill attacks the mortgage as fraudulent, and that it and the assignment constituted one transaction. Judge Severens, in the course of his opinion, deals with the general point now under consideration, and specially refers to the extended discussion of the principles involved, as they are considered in Ball v. Tompkins, 41 Fed. 486. He concludes in harmony with the result reached by Judge Brown in Lehman v. Rosengarten, supra. The general principle on which Ball v. Tompkins is based appears from the following extract:

And this brings us to the pivotal question in the present inquiry: What is the nature and character of the possession of the state or federal court, which excludes the exercise of authority over the subject or thing by the other? From the authorities on this subject (which, in the circuit courts, are not altogether harmonious), and from the reasons for the rule, I apprehend it to be, substantially, that the possession contemplated as sufficient to make it exclusive is that the court, by its process, or some equivalent mode, has, either for the direct purpose of the proceeding, or for some other purpose ancillary to the main object, drawn into its dominion and custody some thing. That thing may be corporeal or incorporeal,—a substance or a mere right. But a controversy, a question, an inquiry, is not such a thing. These may be the subject-matter of jurisdiction in a pending cause, which often proceeds, from the beginning to the judgment, without the court's having taken actual dominion of anything. But there is no exclusive jurisdiction over such a matter. The result may be a judgment which will establish a right, but the court has not had any possession. The pendency of a controversy in a suit in a state or federal court is no bar to a suit in the other court involving the same controversy (Stanton v. Embrey, 93 U. S. 548); and each will proceed, in its own course, to a judgment establishing the right.

The control which each court has over its own processes has always been found adequate to prevent mischief from diverse judgments in the several jurisdictions. But, in proceeding on its way, whenever either court finds that the other has already taken actual dominion over some objective thing related to the subject, it will let the thing alone, so long as that dominion is retained, and proceed, if there be enough material besides to support the exercise of its jurisdiction, and the pursuit may reach fruit. If not, it will stop. There are many cases in the Supreme Court Reports where this subject has been discussed and these principles applied. Some of them have already been cited. Others are Heidritter v. Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135; Railroad Co. v. Vinet, 132 U. S. 565, 10 Sup. Ct. 168.

The case of Morris v. Lindauer, supra, was appealed to the circuit court of appeals for the Sixth circuit, and the opinion—by Circuit Judges Jackson (now of the United States supreme bench) and Taft, and District Judge Barr—fully sustains and adopts the reasoning and conclusion reached by the court below.

In Wickham v. Hull, 60 Fed. 329–331, will be found a logical presentation and résumé by Judge Shiras of the general doctrines largely underlying and controlling the case at bar, although there applied to the matter of estates of decedents.

In 2 Story, Eq. Jur. § 1037, it is said:

The trusts arising under general assignments for the benefit of creditors are, in a peculiar sense, the objects of equity jurisdiction; for, although at law there may, under some circumstances, be a remedy for the creditors to enforce the trusts, that remedy must be very inadequate as a measure of full relief. On the other hand, courts of equity, by their power of enforcing discovery and account from the trustees, and of making all the creditors, as well as the debtor, parties to the suit, can administer entire justice, and distribute the whole funds, in their proper order, among all the claimants, upon the application of any of them, either on his own behalf, or on behalf of himself and all the other creditors.

But, without attempting further to pursue the general cases touching on this matter, we turn to the case of Kohn v. Ryan, 31 Fed. 636, which was decided in this district by Judge Shiras in 1887. Ryan had answered, as garnishee, that he held certain funds as proceeds realized from sales of property which had come into his hands as assignee, under a general assignment for the benefit of creditors, executed by the principal defendant, and which funds he held subject to the orders of the state court wherein he had filed his inventory, etc., and that he held no property of said principal defendant, save that which came into his hands by virtue of said deed of assignment. Whereupon the garnishee moved to be discharged. Two points were urged in support of the motion for discharge. The first point is thus stated in the opinion:

First, that the subject-matter of the controversy, to wit, the validity of the assignment, can only be heard and determined in the court having control of the assignment proceedings; the contention being that the provisions of the statute requiring the assignee to file bond and inventory in the district court of the county, and giving that court full authority over the assignee, in effect confers upon that court exclusive jurisdiction over all questions affecting the assignment. The statute of Iowa does not create the right to make an assignment for the benefit of creditors. It simply recognizes, and in some particulars restricts, this right, and provides the method by which the trust created by the deed shall be carried into effect.

And having considered at some length this matter, further, and shown that, by the decisions of the supreme courts of the state of Iowa and of the United States, courts of equity have jurisdiction to entertain proceedings to set aside a will, even though the probate court has allowed it, and administration is in process in such probate court thereunder, the learned judge adds:

If the jurisdiction over estates and wills vested in the probate courts of the states does not oust the jurisdiction of other courts over the question of the validity of the will, why should the control given to the district court of the state in cases of an assignment deprive all other courts of jurisdiction over cases brought to test the validity of the assignment? The argument in support of the exclusive jurisdiction of the probate court is in fact much stronger than in cases of assignment. Before a will can be probated, notice of the hearing must be given, and a contest may be made by parties interested. * * * In case of an assignment the statutes of Iowa do not provide for a hearing upon the question of the execution or validity of the deed, and to secure a hearing upon these questions it is absolutely necessary that an independent proceeding should be instituted; and unless the invalidity of the deed is apparent upon its face, ordinarily, a bill in equity would be the proper mode of attack, especially if the title to realty is involved. The jurisdiction over such independent proceeding to test the validity of an assignment is not limited to the court in which the assignee has filed his bond and inventory, but exists in any court, state or federal, of otherwise competent jurisdiction. [Citing various Iowa and United States court authorities.]

The second point is stated as follows:

Admitting that the state court having statutory control of the assignment proceedings has not, ipso facto, exclusive jurisdiction of the question of the validity of the assignment, nevertheless the assignee and the assigned property are so completely under the control of the state court that a due regard to his duties and obligations, and the comity existing between courts of concurrent jurisdiction, require the adoption of the rule that the United States courts will not compel an assignee to respond to a writ of garnishment, as he may thus be subjected to conflicting orders and judgments, and that in fact the assigned property is practically in the custody of the state court, and that the assignee should not be held to account, upon the process of garnishment, for property or proceeds which he is bound to distribute as directed by the state court.

The opinion is marked with the clearness and vigor of presentation and discussion which eminently characterize all the decisions of that learned judge, and is so satisfactory in the treatment of this question that, although inclined to insert it in full upon this point, I am compelled to content myself with one further extract:

The general rule that one court will not seek to take possession of property already within the possession or control of a court of concurrent jurisdiction is too well settled to need discussion. If a state court, through a receiver or administrator appointed by such court, or by levy of a writ issued to the sheriff or other executive officer of the court, has taken possession of property, the United States court will not interfere with such possession. * * * It will be remembered, however, that, in cases of assignments, possession of the property is not taken under or by virtue of any order or process of court. The assignee derives title and possession from the voluntary act and deed of the assignor, and the state court controls the execution of the trust through its control over the assignee. If it be true that the United States court has jurisdiction to entertain a bill in equity to set aside an assignment on the ground of fraud, then it must have the right to compel the assignee to appear and answer to such bill, or to submit to a decree by default; and, if this be true, then the assignee is liable to be subjected thereby to the same diffi-

culties as arise upon garnishment. The fallacy in the position taken lies in confounding the jurisdiction of the state court over the execution of the trust created by the deed of assignment with the jurisdiction over the wholly distinct question of the validity of the deed of assignment. So far as it now appears, no proceeding to test the validity of the assignment has been brought in the state court, and there is nothing to prevent the United States court, at the suit of citizens of states other than Iowa, from taking jurisdiction of this issue.

The conclusion reached was the overruling of the motion to discharge the garnishee.

Counsel for defendant have cited the court to the case of Shoe Co. v. Mercer (Iowa) 51 N. W. 415, decided by the supreme court of Iowa. In that case the plaintiffs brought action at law in the Des Moines district court, Iowa, against one Byrne, attaching property as belonging to defendant. Mercer intervened, claiming that before the levy of the writ Byrne had conveyed to him the property seized under the writ, by general assignment for the benefit of creditors of the attachment defendant. Plaintiff replied, attacking the validity of the assignment deed, as being fraudulent, etc. The intervener asked the court to instruct the jury—which the court refused —that plaintiffs could not thus collaterally attack the assignment and assignee's right to the property. The supreme court hold the instruction should have been given. In the course of the opinion filed, the court say:

It is likely true, as counsel seem to think, that much depends upon whether or not the property, when taken under the attachment, was in custody of the law, and, if so, much of the contention in support of the present proceeding is removed.

With reference to this question, the court say (page 416):

We think that, without doubt, under our statute, where an assignment is regularly made, and the assignee is in possession of the property for the settlement of the estate, such property is in the custody of the law; but we are not to be understood as holding that an assignment invalid or void, as contravening the provisions of the statute, will operate to place the assigned property in such custody.

This statement of the views of the court, as announced, according to the opinion of the court, is not essential to the determination of the question which the court declare is the controlling element in the case then under discussion, viz. whether a general assignment for the benefit of creditors can, in the courts of Iowa, be collaterally attacked. And we are therefore authorized to regard the statement above quoted as the statement of what the court would have decided, had the point been essential to the determination of the law of the case, rather than an authoritative decision, thereafter to be binding on that court. The cases from the supreme court of the United States cited in the opinion of the court do not touch the merits involved in the above quoted extract from the opinion. These cases are Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; and Freeman v. Howe, 24 How. 450. Krippendorf v. Hyde was an appeal from the United States circuit court for the district of Indiana. The main facts, as stated by the court, are that a suit aided by attachment was

brought in the circuit court, and writ levied on goods claimed by Krippendorf, his claim being that he had purchased the goods from the attachment defendant. Krippendorf executed to the marshal, who had taken the goods into his custody, a delivery bond, and received the goods. On his own motion, Krippendorf was made a party defendant, that he might assert his title to the goods, but on plaintiff's motion his name was stricken from the record. Such proceedings were afterwards had as that judgment was rendered in favor of the attachment plaintiff, and various other creditors who had come in with their claims, against the attachment defendant, and the marshal was ordered to sell the goods to discharge these judgments. Krippendorf, being unable to return the goods, paid to the marshal the amount of the appraisement, as stated in his bond, and thereupon filed this bill to restrain the marshal from paying said funds, or any part thereof, to the attaching creditors, and for decree establishing his ownership of the goods; making the marshal, the attachment plaintiffs, and the other creditors all parties. The contest in the court below was as to his right to maintain this suit in the federal court, since he and various creditor defendants were citizens of the same state, and therefore the diverse citizenship was not present, which was claimed to be necessary to sustain the jurisdiction of that court. The court decide the bill to be "an ancillary or dependent bill, supplemental to an original suit, out of which it had arisen, and is maintained without reference to the citizenship or residence of the parties"; and the decree of the court below dismissing the bill is reversed, and cause remanded for trial.

Covell v. Heyman, supra, was a case which came to the supreme court on writ of error from the supreme court of the state of Michigan. The United States marshal, having an execution, issued from the United States circuit court, levied on certain property as belonging to Adolph Heyman, and took same into his custody. Thereupon the wife of Heyman, claiming this property as her separate, individual property, sued out of the state court a writ of replevin; and the sheriff of such court, assuming the right by virtue of the writ, took the property from the custody of the marshal. The supreme court of Michigan affirmed his right so to do. The United States supreme court state the point before them to be:

The sole question presented for our decision is whether it was error in the state court to permit the recovery of the possession of the property thus held, against the marshal of the United States, for the rightful owner, and whether, on the other hand, it should not have been adjudged in favor of the defendant below, that his possession of the property by virtue of the levy under the writ was in itself a complete defense to the action of replevin, without regard to the rightful ownership.

And they declare that the property in the hands of the marshal, under the writ of the court, was not subject to be taken from him by the sheriff of the state court. In this case the court state the point decided in Freeman v. Howe, supra:

The point of the decision in Freeman v. Howe is that when property is taken and held under process, mesne or final, of a court of the United States, it is in the exclusive custody of the law, and within the exclusive jurisdiction

of the court from which the process has issued, for the purposes of the writ; that the possession of the officer cannot be disturbed by process from any state court, because to disturb that possession would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer; that any person not a party to the judgment, or suit, whose property has been wrongfully, but under color of process, taken and withheld, may prosecute by ancillary proceedings, in the court whence the process issued, his remedy for restitution of the property or its proceeds, while remaining in the control of the court, but, that all other remedies to which he may be entitled, against officers or parties, not involving the withdrawal of the property or its proceeds from the custody of the officer and the jurisdiction of the court, he may pursue in any tribunal, state or federal, having jurisdiction over the parties and the subject-matter. And, vice versa, the same principle protects the possession of property while thus held, by process issuing from the state courts, against any disturbance under process of the courts of the United States; excepting, of course, those cases wherein the latter exercise jurisdiction for the purpose of enforcing the supremacy of the constitution and laws of the United States.

It will be readily noticed that in none of the cases thus cited from the supreme court of the United States was the point decided or involved which is contained in the foregoing extract from the decision in the Mercer Case. The only other cases from the United States courts which the opinion in the Mercer case cites are Adler v. Ecker, 2 Fed. 126, and Lehman v. Rosengarten, 23 Fed. 642, both of which have heretofore been noticed herein, and both of which are adverse to the announcement of the court as given in the Mercer Case, as above quoted. The cases of Lapp v. Van Norman, supra; Morris v. Lindauer, supra; Kohn v. Ryan, supra; and Wickham v. Hull, supra, —evidently were not cited by counsel, and have escaped the notice of the court. The cases are exceedingly few in which the federal courts in Iowa have found themselves compelled to differ with the supreme court of the state in matters which have been presented for decision. The high standing justly awarded to that learned court, and which is not restricted within the state boundaries, abundantly justifies this court in giving great weight to the decisions there announced. But, while cheerfully and loyally following its decisions upon matters based upon the constitution and laws of that state, this court finds in the decisions of the supreme court of the United States abundant justification, if not imperative direction, for adopting that view of the general law which commends itself to the judgment of this court, though that view may not be entirely in harmony with the view announced by the supreme court of the state. In the matter above considered the opinion of that court is not a construction of the statutes of the state, but rather its announcement of its deductions or views of general principles applied to the subject, as to which the statute is silent. We may here adopt and use the words of the supreme court of the United States, in a situation very similar to the present, in Clark v. Bever, 139 U. S. 96, 116, 11 Sup. Ct. 468, as appropriate to the present situation:

The decision of the state court is not, therefore, to be regarded as resting upon the local statute, but only as expressing the views of that tribunal in respect to * * * principles of general law. * * * We cannot, consistently with our deliberate judgment upon this question of general law, accept the decision in Shoe Co. v. Mercer as controlling the determination of the

present case. Upon questions of that character the federal courts administering justice in Iowa have equal and co-ordinate jurisdiction with the courts of that state, although they will "lean towards an agreement of views with the state court if the question seem to them balanced with doubt."

Our attention is called to the closing portion of the decision in Shoe Co. v. Mercer, as extracted above, as being a qualification of the general principle in such extract stated, and as justifying, under that opinion, the contention that the supreme court of Iowa would hold the bill herein as permissible under such opinion. It is not deemed necessary to determine this contention, which, however, has much of force, for, under the views hereinbefore expressed, we are compelled to overrule the first plea, as presented by defendant Barnes.

2. As to the second plea,—that this bill cannot be sustained because of the pendency of the action at law, wherein are raised, as between the parties hereto, the same issues which are tendered by this bill,—an order must be entered overruling this plea. The present action must be conceded to be eminently proper, if indeed it be not the only method whereby the deed of assignment can be attacked. In the Mercer Case, supra, the supreme court of Iowa expressly hold that such an assignment cannot be collaterally attacked. And the doctrine of that case would forbid, in the state courts, such an attack by a reply to the answer of the garnishee. In the Ryan Case, supra, Judge Shiras, while declining to rule on this point, as not essential to the determination of the question then before him for determination, indicates his views to be in accordance with the rule laid down in the Mercer Case, and which is abundantly sustained by authority, state and federal. The bill herein appears to be an ancillary or dependent bill, so far as it relates to the action at law, within the opinion in Krippendorf v. Hyde, supra. And, being such, it may properly now be presented, and the validity of the chattel mortgages and the deed of assignment here determined. Besides, only by such a bill can the chattel mortgagees be brought in, and the whole matter thus determined. Let an order be entered overruling the pleas in abatement tendered, by defendant Barnes, to which defendant excepts. And defendant is given until next February rule day to plead further herein.