ROTHSCHILD et al. v. HASBROUCK et al.

(Circuit Court, S. D. Iowa, C. D.    February 10, 1896.)

1. STATE COURTS—CONCLUSIVENESS OF DECISIONS.

The decisions of the highest court of the state, as establishing a rule of property, are controlling authority in the courts of the United States with regard to the construction and effect of a statute of such state regulating assignments for the benefit of creditors.

2. ASSIGNMENTS FOR CREDITORS—PREFERENCES—CONTEMPORANEOUS MORTGAGES.

One H., a clothing merchant, executed and delivered a general assignment for the benefit of his creditors. Within a few days before its execution, he had made three chattel mortgages upon his stock in trade to certain of his creditors, and another creditor afterwards brought suit to have the assignment and mortgages set aside, as constituting one transaction and giving preferences to the mortgagees. It appeared that, at the time of the execution of the several instruments, H. was insolvent; that he knew that the giving of the mortgages would so injure his credit, and precipitate action by his creditors, as to put an end to his business, unless he could raise money which he had no substantial expectation of raising. The creditors to whom the mortgages were given were pressing for the collection of their debts, knew that such collection might be jeopardized by the action of other creditors, and one of them had already given notice of suit. But H. denied that the mortgages were given in contemplation of the assignment, and testified that when they were given he believed he could proceed with his business if he could obtain money which he hoped to obtain. The creditors also testified that nothing had been said to them about an assignment, and that the mortgages were not given or accepted with reference thereto. *Held*, that the mortgages were not given in contemplation of the assignment, did not form a part of it, and said assignment was valid under the statutes of Iowa.

This was a suit by Emanuel and Abraham Rothschild against J. J. Hasbrouck, M. O. Barnes, and others, to set aside an assignment. The cause was heard on the pleadings and proofs.

Cummins & Wright, for plaintiffs.

Park & Odell, for defendants.

WOOLSON, District Judge.    The bill alleges that plaintiffs, who compose the firm of E. Rothschild & Bros., are citizens of the state of Illinois, and were at the dates hereinafter named creditors of defendant J. J. Hasbrouck in the sum of $3,487.70, for which they have recovered in this court, and now own, a valid and subsisting judgment against said Hasbrouck; that upon October 9, 1893, defendant J. J. Hasbrouck (at that date a citizen of the state of Iowa, and engaged in business as a clothing merchant at Corydon, Iowa) executed and delivered a deed of assignment for the benefit of his creditors to defendant M. O. Barnes, who is a citizen of said state of Iowa, which deed purported to convey to said assignee his entire property, except such as was exempt from execution under the laws of said state; that, prior to the said execution and delivery of said assignment deed, said Hasbrouck executed and delivered three several chattel mortgages to certain of his creditors, which mortgages were given upon his said stock of clothing, etc., then at his place of business at Corydon; that the execution of said assignment and of said chattel mortgages were parts

of the same transaction; that at the time of said chattel mortgages said Hasbrouck was insolvent, and had in mind and intended to execute said deed of assignment, and said chattel mortgages were so executed by said Hasbrouck, and were accepted by the several mortgagees thereof, with the intent thereby to give to said mortgagees preferences over the other creditors of said insolvent; that said mortgagees, at the time they accepted said mortgages, were aware of the insolvent condition of said Hasbrouck, and of his intention to execute a general assignment for the benefit of his creditors; that said transaction thereby became and was, as to said chattel mortgages and said assignment, fraudulent in law, and said instruments invalid and void under the laws of the state of Iowa. And decree is prayed declaring the same void. Said mortgagees are made parties to the bill, but are not brought in by subpœna, nor have they appeared herein. Pleas in abatement were filed by Assignee Barnes, and, upon hearing, were overruled (65 Fed. 283), whereupon said Barnes filed his answer, admitting the citizenship as claimed; admitting the execution of said chattel mortgages and said deed of assignment by Hasbrouck, but especially denying all allegations as to the said executions being parts of the same transaction; denying that at the time of the execution of said mortgages said Hasbrouck intended to execute said deed of assignment, or that unlawful preferences were by him intended, or were in fact given; and alleging the validity of said assignment deed, and that, as said assignee, he was lawfully proceeding, in the proper court of Wayne county, Iowa, and under the orders and direction of said court, to carry out the provisions of said assignment.

The evidence, as is usual in such cases, is conflicting on the decisive points herein involved. It would serve no useful purpose to detail the evidence. The insolvent condition of Hasbrouck at the date of the execution of said mortgages is fully established. He testifies that he then believed that he could proceed with his business if he could procure certain money as he then hoped. But it is beyond question, under the evidence, that he then recognized the fact that the giving of these mortgages on his stock in trade would probably so destroy his business credit as to prevent further purchases by him, and would also probably bring down upon him active efforts from his other creditors to secure or collect the debts owing to them. So that the evidence justifies the assertion that he knew the giving of these mortgages would so affect his business as that he must either raise the money to discharge them, or practically suspend business, and that he had no substantial expectation that he could raise the money. That the debts secured by these mortgages were actually outstanding, and bona fide, is not attacked by plaintiffs. One of these debts was being actively pressed, and Hasbrouck had been served with notice of the institution of suit thereon, and for a term of court to commence in a few days thereafter. The evidence is uncontradicted that the parties having the collection of these debts were pressing Hasbrouck for their payment or security. The exact dates upon which

these mortgages and the assignment were executed are not shown with certainty. The mortgages were dated October 6, and the assignment October 9, 1893. But the evidence might sustain the conclusion that in fact the assignment was signed on October 7th, the day following the execution of the mortgages, and was delivered to the assignee upon October 9th. Possession of the stock of goods was taken by the assignee on the latter date. If the statements of Hasbrouck—made two or three days after the assignee had taken possession, to representatives of other creditors—were to control, a finding that the mortgages were given in contemplation of the assignment, and for the purpose of giving unlawful preferences to these mortgagees, would be justified. But Hasbrouck denies such was his intention, and stoutly denies that he had in mind at the time the mortgages were given, or contemplated, the giving of the assignment. The persons in charge of the collection of these debts, to secure which the mortgages were given, each testify that at the time these mortgages were given nothing had been said by them to Hasbrouck, and he had said nothing to them, with reference to the making of an assignment by him. The testimony of these persons having these debts in charge is unshaken that these mortgages were not taken or accepted by them with reference to any expected or intended assignment by Hasbrouck, but that they were taken by them in the active attempt to secure the debts whose collection they recognized might at any time be jeopardized by proceedings by other creditors for the collection of other debts which Hasbrouck then had outstanding. The Iowa statute in force in October, 1893, relating to the matters herein involved, is section 2115 of Code of 1873:

No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid, unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims.

In Lumber Co. *v.* Ott, 142 U. S. 627, 12 Sup. Ct. 318, it is said:

The rights of the parties are determined by the local statute, and the construction placed thereon by the supreme court of the state is decisive. The question of the construction and effect of a statute of a state regulating assignments for the benefit of creditors is a question upon which the decisions of the highest court of the state, establishing a rule of property, are of controlling authority in the courts of the United States.

The Iowa statute above copied received extended consideration by the supreme court of the United States in the case just cited. The general propositions underlying this statute, as expounded by the supreme court of Iowa, up to the date of that decision, are clearly and comprehensively stated by Justice Brewer, and applied to the case then under consideration. These propositions are thus stated in the opinion delivered by Justice Brewer (I omit the citations of Iowa cases which are given as supporting these propositions):

First, this section does not prevent partial assignments with preferences, or sales or mortgages of any or all of the party's property in payment of, or security of, indebtedness. Its operation is limited to the matter of general assignments, and does not destroy that jus disponendi which is an incident to

title. Second, several instruments executed by a debtor at about the same time may be considered as parts of one transaction, and in law forming but one instrument; and if, as thus construed, they have the effect of a general assignment with preferences, they are within the denunciation of the statute. And, third, that although several instruments may be executed by the debtor at about the same time, they do not necessarily create one transaction, or are to be considered as one instrument; and whether they do or not, and whether they come within the denunciation of the statute, depend upon the character of the instruments, the circumstances of the case, and the intent of the parties.

In the Ott Case, supra, the acts by the insolvent (which are alleged to constitute parts of the same transaction with the execution of the general assignment, and therefore, as unlawful preferences, to invalidate the assignment) are conceded to have been performed by Ott "when Ott began to think that the end of his business career—at least, so far as his present undertakings were concerned—was at hand." These acts are stated as follows:

On the day before the assignment he gave to one Mueller, to whom he owed about $9,000, drafts on his customers, for goods sold, to the amount of $1,-239.46. On the same day he gave to McClelland & Co., to apply on a debt of $900, a like draft to the amount of $660.80. And on the very morning of the assignment he sent a letter to George F. White, the agent of the railroad company, notifying him that he might hold four car loads of glass then in the possession and on the tracks of the railroad company, as security for the balance of between eight and nine hundred dollars of freight due.

The decision then proceeds:

Now, these transactions were but shortly prior to the assignment. They were, in a general sense, contemporaneous with it. They took place when Ott was conscious of the impending danger of the closing out of his business, and they operated as preferences to these creditors.

But, as leading the court to the conclusion reached, there is stated, as evidence in the case—

The positive testimony of Ott that, when he gave these drafts to Mueller and McClelland, he had not determined upon an assignment. He knew that he was in financial trouble, and considered himself under special obligations as to one, at least, of these debts. His purpose was simply payment, and that he had a right to make. He supposed he should have to stop business, but in what manner the close should be brought about—whether by the action of creditors, or his own voluntary transfer—was undetermined. He was waiting and considering, and only decided upon an assignment on the morning of the 27th. If such was the fact, then, within the rules laid down by the supreme court of Iowa, these preferences are not to be taken as part and parcel of the assignment, or as vitiating it. In reference to the letter from Ott to White, with respect to holding the four car loads of glass as security for freights, it is clear that this was only putting in writing an agreement made long before. For the testimony of White and Ott both show—and to their testimony there is no contradiction—that White, months before, had again and again urged prompt payment of freights, and that Ott had agreed to always leave on the track goods enough to secure any amount of freights that might be due. The prior agreement, though oral, was valid; and the letter was not a new contract giving them a preference, but only a written expression of that which had heretofore been agreed upon, and agreed upon when there was no thought of an assignment.

Plow Co. v. Breese, 83 Iowa, 553, 49 N. W. 1026, is a later case which throws valuable light on the question under consideration. There, as here, the attempt was, by bill in equity, to have declared void an assignment, on the grounds of unlawful preferences. The

defendant firm was insolvent, and, while the deed of assignment was being prepared, Healy, a creditor of the firm, who had become aware of such deeds being in process of preparation, caused an attachment levy to be made on some of the insolvent's property. At the time of the levy the assignment had been drafted, and one of the firm had signed the paper. Before the other member had affixed his signature the partners learned of the levy of the attachment. Thereupon, after conference with the attaching creditor, it was agreed that the firm should execute to the creditor a chattel mortgage of the attached property, in consideration of the creditor's releasing the levy of his attachment, and permitting the attached property to pass with the other property into the possession and control of the assignee. "The final signature to the assignment and the signature to the chattel mortgage were made at the same time." The supreme court of Iowa, having cited section 2115, supra, say:

Now, if, as part of the same transaction, and for the purpose of giving a preference to Healy, the partnership executed the mortgage to Healy, the assignment and mortgage would both be void, being within the provisions of the statute above cited.

The court (accepting, for the purpose of the case, what was evidently the belief and understanding of the parties at the time,—that the assignment must have the signature of both partners, to be valid) uphold the mortgage and assignment on the ground that there was no collusion between Healy, the attaching creditor, and the insolvent debtors:

The acts of the members of the firm and of the assignee amounted to a concession that the attachment was a valid lien on the property. They gave the mortgage because they believed it would be to the advantage of themselves and all the creditors to release the attachment. Finding as we do that the attachment was levied before the assignment was completed, and that it was competent for the parties to substitute the mortgage lien for the lien by attachment, it is an end of the case.

In the recent case of Clement v. Johnson, 85 Iowa, 566, 52 N. W. 502, the supreme court of Iowa again consider and announce the law of the state as settled by the decisions of that court. On the 28th day of November, defendants, then insolvent, executed and delivered to a creditor bank a chattel mortgage on their stock of merchandise at Centerville, Iowa. At the same time said insolvents executed and filed for record, but without the knowledge of the mortgagees therein, four several mortgages on real estate. And on the same day said insolvents executed 12 other mortgages, none of which, however, were delivered or recorded. The mortgages thus drawn included all or nearly all the property of said insolvents, and were designed to secure all their creditors, the home creditors having the first preferences. The insolvents then negotiated a sale of their stock of merchandise, which sale, however, failed to be completed. On the failure of this attempted sale, on the 1st day of December, the insolvents executed a general assignment for the benefit of their creditors, and the assignee took immediate possession thereunder. The contest now arose as to the validity of said assignment; plaintiff claiming it to be void,

v.72f.no.7—52

among other reasons, because some creditors were preferred to others. The jury—the contest arose in an action at law—specially found, among other findings, that the intent to make a general assignment was formed after the mortgages were given. The supreme court, in sustaining the decision reached in the court below (upholding the assignment as valid), announced the law of the state, as decided in numerous cases cited in the opinion, as follows (page 569, 85 Iowa, and page 502, 52 N. W.):

It is true that, if the giving of the mortgages and the making of the assignment had been parts of a single transaction, it [assignment] would have been invalid under the rule announced by this court in numerous cases. * * * But it is equally well settled that an insolvent debtor may convey his entire estate to pay one or more creditors, even though by so doing he defeat all other creditors in the collection of their claims. * * * If the debtor, in giving security to a part of his creditors, does so without intending to make a general assignment for the benefit of all of them, the transaction is valid, even though within a brief time thereafter, and on the same day, he forms and executes the purpose of making such an assignment.

In the case at bar the assignment, according to its terms, is general, and "for the benefit of all creditors, in proportion to the amount of their respective claims." On its face, therefore, it is not in violation of the statute. Upon plaintiffs is the burden of proving that what preceded and accompanied the making of the assignment constituted one transaction; that is, that the giving of the mortgages and the making of the assignment were "parts of a single transaction." While the evidence contains some contradictory features, upon the whole case the evidence does not convince me that, at the time the chattel mortgages in question were executed and delivered, Hasbrouck contemplated or intended to make an assignment for the benefit of his creditors. He was then intending only to secure certain creditors, who were actively and persistently pressing him for security of their claims. The preponderance of the evidence leads me to the conclusion that the assignment was not contemplated by Hasbrouck at the time he executed said mortgages, but that the making of this assignment was a subsequent and different transaction. I find, therefore, the equities herein with the defendants. Let a decree be enterd dismissing the bill at costs of plaintiffs; to all of which plaintiffs except, and are given 60 days from entry of judgment within which to have signed and filed a bill of exceptions.