### SWOFFORD BROS. DRY-GOODS CO. v. MILLS et al.

(Circuit Court, D. Wyoming. April 7, 1898.)

1. VOLUNTARY ASSIGNMENT—JURISDICTION TO DETERMINE VALIDITY.

The power of the district courts in Wyoming, under a deed of assignment, is merely to supervise and direct the administration of the trust; and jurisdiction over an independent proceeding to determine the validity of the assignment is not exclusively in the court where the deed is filed.

2. SAME—PARTNERSHIP PROPERTY.

Under the Wyoming assignment law, providing that creditors accepting the benefit of an assignment shall give release in full of their several debts, held, that an assignment, by a partnership, of partnership property alone, to pay firm debts only, is invalid; creditors are entitled to look also to the separate property of the partners.

3. PARTNERSHIP—FALSE STATEMENT OF FINANCIAL CONDITION BY MEMBER.

A statement by a member of a firm of its financial condition, in order to obtain an extension of credit, is binding on him and on the firm, even though he is mistaken, since he has full opportunity to know its falsity, and by making the statement obtains an advantage he would not otherwise have enjoyed.

**4. STATE STATUTE—ADOPTION BY ANOTHER STATE—CONSTRUCTION.**
   Where a statute of one state is adopted by the legislature of another, the construction placed upon it by the highest court of the former state is also adopted; provided, however, the statutes are identical, and their construction involves the determination of the same questions.

E. E. Lonabaugh and J. C. Baird, for plaintiff.
A. M. Appelget and Burke & Fowler, for defendants.

RINER, District Judge.  This case is before the court upon a motion to dissolve an attachment.  The defendants were co-partners doing business under the firm name of S. E. Mills & Co., and carrying on a general mercantile business, in Sheridan county, this state, at the towns of Dayton, Parkman, and Slack.  On the 14th of January, 1898, they made an assignment of the firm property for the benefit of the creditors of the firm, but made no assignment of the property of the individual members of the firm.  The plaintiff brought its action in this court on the 8th of February, 1898, and caused an attachment to be issued and levied upon certain property alleged to belong to the defendants, then in the hands of the assignee under the deed of assignment above mentioned.  The attachment was issued upon statutory grounds, fully set out in the affidavit for attachment.  The questions presented for determination are:  First. Can the validity of this assignment be inquired into and determined by this court, or can that question be heard and determined only in the court having control of the assignment proceedings, under the statute?  Second. If this court may inquire into the validity of the assignment, is an assignment, made by a partnership, of partnership property only, a valid assignment, under our statute?  Third. If this court may inquire into the validity of the assignment, and if, under our statute, an assignment, to be valid, must include all of the debtor's property, including the property of the individual members of the partnership as well as the property of the partnership, is there such a showing of fraud in law as will sustain an attachment on behalf of this plaintiff?  These questions we will briefly notice in their order.

It was insisted at the argument that the subject-matter of the controversy now before the court, viz. the validity of the assignment, can only be heard and determined in the court having control of the assignment proceedings; the contention being that the provisions of the statute requiring the assignee to file a certified copy of the assignment and schedule, his oath, and a written undertaking conditioned for the faithful discharge of his duties, in the office of the clerk of the district court in the county in which the defendant resides or is engaged in business, and giving that court authority over the assignee, in effect confers upon that court exclusive jurisdiction over all questions affecting the assignment.  In order that we may arrive at a proper solution of this question, let us inquire first as to the effect of the provisions of our statute authorizing an assignment. The statute cannot be said to create the right to make an assignment for the benefit of creditors.  The most that can be said for it is that it recognizes, and in some respects restricts, this right, and provides the method by which the trust shall be carried into effect.

A debtor, under this statute, cannot be compelled to make an assignment, nor can the court by any order or decree obtain control over or possession. of the debtor's property. That remains in the hands of the assignee under the deed of assignment, in trust for the benefit of the assignor's creditors. In other words, by the execution of the deed of assignment the debtor conveys his property to the assignee, and an express trust is thereby created, and by the provisions of the statute the district court of the county wherein the assignor resides or transacts business is clothed with power and authority to supervise and direct the administration of the trust thus created. This is the extent of its power. In State v. Foster, 38 Pac. 929 (decided in 1895), the supreme court of this state, in the course of its opinion, said:

"The common-law rule is that a general assignment passes the title. Our statute provides the same thing, in effect, and it does not provide that the title shall not pass. It authorizes a debtor to make a general assignment without preference or priority of creditors. It requires that this shall be done by indenture, which is the usual method of passing title. It speaks of the assignment as 'conveying' an interest. The assignee is empowered to sell by virtue of the indenture and recording, and without waiting for an order of the court. The power of the court over the estate is, by the words of the statute, simply a 'supervising' power."

See, also, to the same effect, Carey v. Foster (Wyo.) 51 Pac. 206.

The statute under which this assignment was made, however, does not provide for a hearing upon the question of the execution or validity of the deed of assignment. To secure a hearing upon this question, it is necessary, therefore, that an independent proceeding be instituted; and, unless the invalidity of the deed is apparent on its face, a proper mode of raising the question, especially if the title to real estate is involved, would be by a bill in equity; and the jurisdiction over an independent proceeding to test the validity of the assignment is not limited to the court in which the assignee has filed a copy of the deed of assignment, schedule, his oath, and the undertaking. The jurisdiction of the court is given by the law, not by the parties, and can neither be conferred nor taken away by their mere consent or agreement. If the conditions prescribed by the law for jurisdiction exist, the jurisdiction exists, and the court is bound to take jurisdiction when a proper case is brought. As stated by Judge Shiras in the case of Kohn v. Ryan, 31 Fed. 638 (which was a case where an assignee was garnished in an attachment proceeding against the assignor):

"The general rule that one court will not seek to take possession of property already within the possession or control of a court of concurrent jurisdiction is too well settled to need discussion. If a state court, through a receiver or administrator appointed by such court, or by levy of a writ issued to the sheriff or other executive officer of the court, has taken possession of property, the United States court will not interfere with such possession. * * * It will be remembered, however, that, in cases of assignment, possession of the property is not taken under or by virtue of any order or process of court. The assignee derives title and possession from the voluntary deed and act of the assignor, and the state court controls the execution of the trust through its control over the assignee. If it be true that the United States court has jurisdiction to entertain a bill in equity to set aside an assignment on the ground of fraud, then it must have the right to compel the assignee to appear and answer to such bill, or

to submit to a decree by default; and, if this be true, then the assignee is liable to be subjected thereby to the same difficulties as may arise upon a garnishment. The fallacy in the position taken lies in confounding the jurisdiction of the state court over the execution of the trust created by the deed of assignment with the jurisdiction over the wholly distinct question of the validity of the deed of assignment. So far as it now appears, no proceeding to test the validity of the assignment has been brought in the state court, and there is nothing to prevent the United States court, at the suit of citizens of states other than Iowa, from taking jurisdiction of this issue."

The case is directly in point here. No proceeding whatever has been instituted in the state court to test the validity of this assignment. The plaintiff being a citizen of another state, and the amount in dispute being large enough, he has a right to have the question heard and determined in the federal court. While the decisions of the state courts are not in harmony upon this question, the federal courts uniformly hold that property in the hands of an assignee for the benefit of creditors under statutes clothing the state courts with power and authority to supervise and direct the administration of the trust, as is the case under our statute, is not in custodia legis. Jaffray v. McGehee, 107 U. S. 361, 2 Sup. Ct. 367, was a case where the firm of Morse & Bell, doing business in Arkansas, executed a general assignment of all its property for the benefit of creditors to one James M. Judson, who accepted the trust, gave bond, and filed an inventory of the property in the state court; the assignment being made in December, 1878. In January, 1879, another mercantile firm obtained a judgment in the United States circuit court against the assignors, and the marshal levied execution on the property in the hands of the assignee. Other creditors then filed a bill in the federal court setting forth the execution of the assignment, and praying that further proceeding upon execution be enjoined, and the property returned to the assignee. Upon a demurrer to the bill the circuit court held that the assignment was void on its face, and dismissed the bill, and this ruling was sustained by the supreme court. To the same effect is the case of Chittenden v. Brewster, 2 Wall. 191. That was a bill to set aside an assignment filed in the circuit court of the United States for the district of Illinois, and the supreme court sustained the bill; holding that the filing thereof gave the complainant the first lien on the property, although in fact the assignee had delivered over the property to a receiver appointed in a proceeding brought in the state court, but not commenced until after the filing of the bill in the federal court. There are numerous other cases bearing on this question. Among those directly in point are the following: Shelby v. Bacon, 10 How. 56; Adler v. Ecker, 2 Fed. 126; Lapp v. Van Norman, 19 Fed. 406; Lehman v. Rosengarten, 23 Fed. 642; The James Roy, 59 Fed. 784; Jones v. Machine Co., 27 C. C. A. 133, 82 Fed. 295; Hogue v. The City of Frankfort, 62 Fed. 1006; Rothschild v. Hasbrouck, 65 Fed. 283; Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677. It would be exceedingly interesting, but would extend this opinion to an unwarranted length, to review all of the federal cases upon this subject. It is sufficient to say that the uniform ruling in the federal courts is that the filing of a copy of the

assignment, schedule, oath, and bond of the assignee in the state court by the assignee does not clothe that court with exclusive jurisdiction over the question of the validity of the assignment, nor is that question, in fact, put in issue in the usual proceeding had in executing the assignment. It is therefore open to creditors to attack the validity of the assignment by proper proceedings in any court of otherwise competent jurisdiction, and the judgment or decree of the court wherein the question as to the validity of the assignment is tried is legally binding upon all parties to such proceeding. If, in a hearing upon this question, the assignee being a party, as he is in this case by virtue of his petition of intervention, it is adjudged that the deed of assignment is void as against creditors, the assignee may bring such adjudication to the knowledge of the court having charge of the trust; and that court will undoubtedly give full force and effect to such adjudication, so far as the same may affect the proceeding before it, and in this way the assignee will be fully protected. It results from the views above expressed that the validity of this assignment may be inquired into by this court.

The second question depends upon the construction of the statute of this state regulating voluntary assignments. That statute, in its first section, provides:

"That any debtor or debtors in embarrassed or failing circumstances may make to one or more assignees a general assignment of all of his or their property in trust for the benefit of his or their bona fide creditors; and all assignments hereafter made by such person or persons for such purpose, except as provided for in this act, shall be deemed fraudulent and void. A debtor is insolvent and in embarrassed and failing circumstances within the meaning of this act when he is unable to pay his debts from his own means, as they become due."

It is contended on behalf of the defendants and the assignee, who has intervened in the case, that by the terms of this statute, which provides that any "debtor or debtors" may make an assignment, a co-partnership may make an assignment of its firm property without assigning the property of the individual members of the firm; that the deed of assignment in this case, which is conceded to be an assignment by the partnership of partnership property exclusively, is a valid assignment; and it is insisted that because certain sections of this statute are copied from the statutes of Indiana, and because the supreme court of that state has held that a partnership assignment of partnership property only is valid, this court is bound by that construction. The rule undoubtedly is that, where the statute of one state is adopted by the legislature of another state, the state so adopting the statute adopts it with the construction placed upon it by the highest court of the state from which the statute was taken. In applying this rule, however, it must appear that the statutes are identical, and that their construction involves a determination of the same question. The statute in force in Indiana, and which has been construed by the supreme court of that state as above indicated, does not provide for a release of all claims against the debtor, whereas our statute (Laws 1890, p. 90, § 28) is as follows:

"In all cases where the assignor complies with the provisions of this act, any creditor accepting from the assignee any dividend arising from the property of

the assignor to which he is entitled under any assignment made under this act, shall release the assignor from all further liability on the claim or claims on which said payment may be made."

And the supreme court of this state, in the case of Downes v. Parshall, 26 Pac. 996, said:

"The release is a matter which the statute provides for, and not the assignment; a result which the statute causes to follow the execution of an assignment according to the statutory terms." (In other words, that the release is incorporated in the assignment by operation of law and that it is unnecessary to specially provide for it in the deed.)

It will be seen, therefore, that there is a radical difference between the statute of Indiana and the statute now under consideration. In many of the states the statutes authorize the assignors to make provision in the deed for the release of the claims of creditors; and, with few exceptions, where such a release is provided for, either in the deed or by statute, it is held that the assignment, to be valid, must include all of the assignor's property, and that the assignment, by a partnership, of partnership property exclusively, is upon its face a partial assignment only, instead of a general assignment, and as such, under statutes like ours, the assignment is void,—the reason for the rule being that where the debtor, by his deed, or where the statute under which the assignment is made, compels the creditor to assent to a release of all of his claims against him, he must fairly devote his entire property to the payment of his debts. Any other rule would involve the unjust absurdity of allowing a debtor, by the assignment of partnership property only, to obtain a complete discharge from debts for which his individual property, ample in many instances to pay them in full, is liable. Under statutes like ours, where a release of all claims becomes a part of the assignment, as decided by our supreme court, whether included in the deed or not, the necessity for a general assignment of all the debtor's property is at once apparent. As stated by the supreme court of Minnesota in the case of May v. Walker. 28 N. W. 252 (which was a case of an assignment by a partnership of partnership property only):

"In contemplation of law, all his unexempt property belongs to his creditors; and to permit him to put a part of it out of their reach unless they will submit to his terms, and take less than they are entitled to, is to permit him to hinder and delay them in the collection of their demands out of property justly and legally liable for the same."

The effect of the statute is to prevent creditors from receiving compensation out of the debtor's property unless they take the risk of yielding up some portion of their debts, and conferring on him a substantial benefit; and if the assignment is not of all the property of the debtor, but only of a part, the condition imposed by the statute, and made a part of the assignment, is oppressive and without any color of justice. I do not think the statute will bear such a construction. It is true that many of the states recognize assignments of partnership property only, but in most of them, to which my attention has been called, where that rule prevails, no releases are required, and partial assignments are upheld. Thus, in Kansas, the supreme court of that state, in

86 F.—36

the case of McFarland v. Bate, 25 Pac. 238, while recognizing the validity of a partnership assignment of partnership property only, base the decision upon the ground that no releases are required. The court in that case said:

"We are cited to several cases holding against the validity of partial assignments, but these authorities are based on statutes requiring that all the property or estate of the debtor shall be conveyed, or where one of the conditions of the deed making a partial assignment was that the creditors accepting its terms should give releases in full of their several debts. It may now be considered to be established by the weight of authority that a partial assignment, which exacts releases from accepting creditors, and deprives them from access to the residue not assigned, is invalid. In this case, however, no releases were required."

The same is true of the state of Iowa. In that state partial assignments are upheld. In Texas the statute, like ours, provides for a general assignment for the benefit of creditors. True, in its first section, it speaks of an insolvent debtor, and in that respect differs from our statute, which speaks of a debtor or debtors. The second section of the Texas statute, however, provides that the assignment shall be acknowledged, certified, recorded, and that the deputy shall annex to the assignment an inventory containing: First, a full and true account of all creditors of such "debtor or debtors"; second, the place of residence of each creditor, if known to such "debtor or debtors"; sixth, for a full and true inventory of the estate at the date of assignment, and the value of such estate according to the best knowledge of the "debtor or debtors"; seventh, an affidavit shall be made by such "debtor or debtors," etc.,—while our statute, in the second section, provides that the assignor shall make oath, before some person authorized to administer oaths, that the indenture and schedule contain a statement of all the property, rights, and credits belonging to "him," or of which "he" has any knowledge, and that "he" has not directly or indirectly transferred or reserved any sum of money or article of property for "his" own use, and that "he" has not acknowledged a debt, etc., with intent to delay or defraud "his" creditors. Thus, it will be seen that while our statute, in its first section, speaks of the debtor or debtors, in the second section it speaks of the assignor and his property, etc., while the Texas law, in the first section, speaks only of the debtor, but in the second section speaks of the debtor or debtors. This is substantially the only difference between the two statutes in that respect. As to the release provision, the reasons for requiring an assignment to be an assignment of all of the debtor's property certainly applies with full force in this state, because, under our statute, every assignment provides for the release of all of the claims of the creditor against the debtor, if he accepts any dividend arising from the property assigned. Under the Texas law the party making an assignment has a right to insert such a provision in his deed, and, where the assignor avails himself of this right, both the state and federal courts in that state hold that there cannot be a valid assignment by a partnership of partnership property only. In Donoho v. Fish, 58 Tex. 164, the supreme court, after holding that only a general assignment is contemplated by the statute of Texas, said:

"If, however, co-partners could, under the act, make an assignment of partnership property only for the benefit of the creditors of the firm alone, there would be an insuperable objection to such an assignment containing a clause requiring a release of the debtors by the creditors, as a condition to the right to participate in the proceeds of the assigned property. * * * He who wants the benefit of the act by which he seeks to be released from his just debt without full payment must comply with the act, by conveying to the assignee all of the property required to be conveyed, whether the same be owned by him individually, or as a member of a firm; and if he does not do so by the terms of his deed, aided by the law, his assignment is void, and imposes no obstacle to creditors in collecting their debts by usual process."

And the ruling in that case was followed in the case of Kennedy v. McKee, 142 U. S. 606, 12 Sup. Ct. 303.

I think, under our statute, it must be held that an assignment, to be valid, must include all of the assignor's property; that is to say, the separate property of the individual members of the firm, as well as the firm property. The statute, to my mind, clearly contemplates that all of the property, real and personal, of the debtor making the assignment, except such as is exempt by law from forced sale, whether the same be partnership property, or property owned by each partner in his own individual right, shall pass by the assignment, to make it a valid assignment. As already suggested, the statute does not undertake to make an assignment for a debtor. It provides how an assignment may be made, and aids and makes complete an assignment which evidences an intention of the debtor to comply with its provisions. The provision of the statute is that the debtor or debtors may make a general assignment of all his or their property; and if he makes such an assignment, which is the only assignment authorized by the statute, the statute then, by section 28, p. 90, Laws Wyo. 1890, provides that every creditor accepting from the debtor any dividend arising from the property shall release the assignor from all further liability on the claim or claims upon which the payment is made. The separate property of partnership debtors is liable for their just debts, and, as between debtor and creditor, each partner is liable, and his whole separate property chargeable, as well for his partnership as his individual debts. How, then, can it be said, as contended by counsel at the argument, that a release from all further liability on the claim upon which payment has been made would, in effect, release only the partnership, and that the right to proceed against the individual partners would still exist. I think such a release would release the individual members of the firm, as well as the firm. In the case of Wyles v. Beals, 1 Gray, 237, Chief Justice Shaw said:

"It not unfrequently happens that a man of ample means and credit enters into partnership with a person supposed to have capacity for business, but with little or no property. The credit is given to the partnership on the known amount of the separate property of one of the partners, each being liable in solido for the whole of each partnership debt. Under such an assignment as this [which was an assignment by a partnership of partnership property only] partners might obtain a full discharge from all partnership demands, while one or both of them has property which the law makes chargeable with those debts, and which is sufficient to pay them."

I think, therefore, that the assignment, being partial only, cannot be sustained.

The third question is one of fact, arising on the affidavits filed in support of and against the motion to discharge the attachment. I have examined these affidavits with great care, including all of the correspondence between the parties; and, without going over the facts set out in each of the affidavits in detail, I think the attachment must be sustained, at least until the trial of the case, when there may be an opportunity to inquire fully into some of the transactions of the parties, including a number of conveyances which were made by them at or about the time of the assignment. It is true, Mr. Wallace explains that one mortgage for $4,000 is without consideration, and should be released; but it has not been released, and there is no showing here from the bank, in whose favor the mortgage is made, to the effect that it was without consideration, and is entitled to be released. Another mortgage was made six months prior to the assignment, but was not recorded; neither was this plaintiff advised of its existence. And, further than that, I am inclined to the view that Mr. Wallace's statement of the financial condition of the firm was binding upon him and upon the firm, even if he was mistaken. He was in a position to know, and was seeking to obtain credit, or the extension of credit, upon his statement; and I think he ought not now to be permitted to say that, while it was not true, it was a mere mistake upon his part, and therefore afforded no ground for the action taken by the plaintiff. I think it must be held that one who makes a false representation, on which another relies, is liable, whether or not he knew of its falsity, in a case where he had full opportunity to know that it was false, and where by making the statement he gained an advantage which he would not otherwise have enjoyed.

The views above expressed I believe to be in harmony with the weight of authority. If, however, I am mistaken in this, the defendants are not without remedy. In concluding, I desire to say to counsel upon both sides that I appreciate the very great assistance given the court in the investigation of this somewhat complicated case. The case was argued, with distinguished ability, and the briefs were able and exhaustive. The motion to dissolve the attachment will be denied.