## SOUTHERN RY. CO. et al. v. BLACK et al.
### No. 4906.

Circuit Court of Appeals, Fourth Circuit.
April 13, 1942.

Ellis Nassif, of Raleigh, N. C., for appellees and cross-appellants.

Jos. F. Johnston and Charles T. Abeles, both of Norfolk, Va. (Murray Allen, of Raleigh, N. C., on the brief), for appellants and cross-appellees.

Edward J. Fruchtman, of Washington, D. C., Atty., U. S. Department of Labor, (Warner W. Gardner, Sol., Mortimer B. Wolf, Asst. Sol., both of Washington, D. C., D. Lacy McBryde, Regional Atty., of Raleigh, N. C., Jacob D. Hyman, and Carroll A. Cahen, both of Washington, D. C., Attys., U. S. Department of Labor, on the brief), amicus curiae.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

These are cross-appeals in suits instituted by four porters, commonly known as "red caps", employed at the Union Station at Raleigh, North Carolina, to recover minimum wages and liquidated damages under section 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1069, 29 U.S.C.A. § 216(b). The defendants are two railroad companies engaged in interstate commerce, and during the period for which claim is made by plaintiffs, i. e., from October 24, 1938 to February 5, 1941, they operated the Union Station in connection with their passenger business. The case was tried before a jury and issues were submitted as to whether the plaintiffs were employees of defendants, and as to what amount each was entitled to recover. The trial judge directed the jury to find that plaintiffs were employees of defendants; and they fixed the amounts which plaintiffs were entitled to recover as wages at $145.25, $145.25, $206.50 and $212.50, respectively. The court entered judgment in favor of the plaintiffs for the amount of this verdict, doubled under the penalty provision of the statute, and allowed a fee to plaintiffs' attorney; and from this judgment both sides have appealed.

By the appeals three questions are presented for our consideration: (1) whether there was error in directing the jury to find that plaintiffs were employees of defendants; (2) whether there was error in permitting the jury to determine the length of time worked by plaintiffs instead of directing verdict on the basis of a twelve hour day and a seven day week for the entire period; and (3) whether there was error in directing the jury to deduct from the amount of minimum wages the amount of the tips which plaintiffs had received. We think that all of these questions should be answered in the negative and that the judgment should be affirmed on both appeals.

There is no dispute as to the facts relating to the issue of employment. Plaintiffs worked as porters or "red caps" during the period involved in suit for what they could earn by way of tips from passengers using the station, and received no other wages or compensation for their services. They were subject to the general direction and control of defendants' station agents and to discharge by them. The head "red caps" were appointed by the station agents of defendants and the others were selected by the head "red caps", who had supervision over them and shared in the tips which they received. In 1939 all of the "red caps" signed with the defendants a written agreement, which defined their status as licensees and provided that they should look solely for compensation for their services to persons for whom they handled baggage and should keep all payments or tips received by them for their services, but it is clear that this agreement changed not at all the relationship theretofore existing.

We agree with the court below that on the undisputed facts the plaintiffs were employees of defendants within the meaning of the Fair Labor Standards Act, which defines "employ" as including "suffer or permit to work". Sec. 3(g), 29 U. S.C.A. § 203(g). Services rendered by porters or "red caps" are absolutely necessary to the proper operation of a railway station such as that at Raleigh, N. C., and such persons are properly considered employees of the company on whose premises they work and to whose general supervision and direction they are subject, even though their compensation is derived from gratuities or tips received from persons to whom they render assistance. The determinative factor is not the source of their compensation, but the fact that they render services which are necessary to the proper running of defendants' station, that they are hired or selected by defendants and permitted by them to render these services, that they are subject to the general supervision and control of defendants in rendering the services and that the de-

fendants have the power to discharge them. It is held without exception that railway companies are liable for the negligence of these porters or "red caps" on the ground that they are servants and employees of the companies. Franklin v. Southern Pac. Co., 203 Cal. 680, 265 P. 936, 59 A.L.R. 118; Cole v. Atlantic C. L. R. Co., 211 N.C. 591, 191 S.E. 353; Southern Pac. R. Co. v. Maloney, 8 Cir., 136 F. 171; Booker v. Pennsylvania R. Co., 82 Pa.Super. 588; note 59 A.L.R. 126 et seq. And we are not impressed with the argument that the companies can escape the payment of minimum wages to them simply by providing that they shall look for compensation to tips from persons whom they assist.

In the recent case of Williams v. Jacksonville Terminal Co., 62 S.Ct. 659, 666, 86 L.Ed. ——, the holding that such porters are employees of the railroad within the fair meaning of the Fair Labor Standards Act is implicit in the court's decision, although the precise point decided was the right of the railway company to a credit of tips received against liability for minimum wages. In dealing with the question of their employment, the court said: "It is accepted here by all parties that, both prior and subsequent to the notice, the red caps were employees of the railroads engaged in a service 'so closely related to physical transportation' in interstate commerce as to come under section 6(1) of the Interstate Commerce Act, 49 U.S.C.A. § 6(1). Stopher v. Cincinnati Union Terminal, 246 I.C.C. 41, 45. As such employees, before the notice they were permitted by agreement to come upon the terminal property, render supervised service to the companies' customers and receive pay for performing this portion of the terminals' transportation business by retaining all tips received."

In the Stopher case, 246 I.C.C. 41, 45, referred to in the opinion of the court, the Interstate Commerce Commission said: "We are of the view that the red-cap service in question, insofar as it relates to the carrying of hand baggage within defendant's passenger station and to and from trains, is in the nature of a terminal service, and is so closely related to physical transportation in railway cars that the charge therefor should be filed with this Commission under the provisions of section 6 of the act, and that such charge is subject to our jurisdiction with respect to its lawfulness."

On the point that the "red caps" were employees of the railroad, the Supreme Court in a note to its opinion made reference to the recent decision of the Interstate Commerce Commission entitled Ex parte No. 72, 229 I.C.C. 410, where the subject was fully considered and the conclusion reached that the "red caps" were employees within the meaning of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The Commission in an opinion by Commissioner McManamy had the following to say with respect to the matter (229 I.C.C. 417-418):

"When consideration is given to the fact that red caps are used at most of the large passenger stations and that at many stations they are paid regular wages, the conclusion is inescapable that at large stations where the distances from trains to waiting rooms and streets are substantial, red caps are considered necessary in the interests of a well-managed station. It seems to be a proper inference that, where the tips from passengers are not sufficiently remunerative, salaries or wages are paid to such persons. The receipt of a stated wage is not essential to create the relation of master and servant or of employer and employee, and it may exist, although the servant or employee neither expects nor is entitled to any compensation. The test of such relationship is whether the alleged master or employer has the right to hire or discharge the servant or employee or exercise authority with respect to the manner and conduct of the work to be performed.

"The services of red caps are usually engaged in much the same manner as are the services of respondents' employees generally, and red caps are under the general and continuing authority of the station-master or similar officer of substantially equal rank and their assistants to supervise and direct the manner of rendition of service. They are also subject to rules with respect to dress and manner of conduct and usually to a variety of other rules, for infractions of which they are subject to reprimand and dismissal. Most companies have considered that they were employees in granting them free transportation. The facts with respect to red caps show that they are employees within the generally accepted meaning of that term.

"Although these persons may be employees of the various respondents, it is apparently the latter's position that they are not performing any work which may properly be defined as the work of an employee or subordinate official. We do not agree with that contention, but are of the opinion that the work is of such a nature that it should be included in the Commission's orders defining and classifying employees and subordinate officials. Our findings will be limited to such work performed at cities of over 100,000 population as specified in the questionnaire. However, there is no apparent reason why the work performed at smaller cities should be treated any differently."

See, also, Harrison v. Terminal Railroad Ass'n of St. Louis, 8 Cir., 126 F.2d 421, and Harrison v. Kansas City Terminal R. Co., 8 Cir., 126 F.2d 422, affirming D.C., 36 F.Supp. 434.

On the second question, little need be said. While there was evidence on the part of the plaintiff that they were on duty twelve hours a day seven days a week during the period of their employment, there was evidence on the part of the defendants that they were required to be on duty only for periods of about a half hour at a time when trains were coming into or leaving the station, and that at other times they were at liberty to leave the station and did so. The question thus presented was a pure question of fact and it was properly submitted to the jury for determination.

On the third question, it is argued for plaintiffs that, since the tips received by them were received from passengers to whom they had rendered services and not from the defendants, the amount thereof may not be used to diminish the liability of defendants for minimum wages; but this, we think, takes entirely too narrow and restricted a view of the character of the employment involved and the purpose of the statute under consideration. The rights of plaintiffs under that statute depend upon their being classed as employees of defendants, notwithstanding that their services are rendered directly to the passengers; and, certainly, if these services are to be treated as employment within the meaning of the statute, the compensation received for them, whether by way of tips or otherwise, must be treated as wages of such employment within the statutory meaning. The fact that the tips are received from the passengers rather than from defendants is immaterial, for they constitute the very compensation which it was agreed between plaintiffs and defendants that plaintiffs should receive when they entered upon the service, and a compensation which, while not paid by defendants, could not be received except as an incident to the service which defendants permit plaintiffs to render. The purpose of Congress in the passage of the Fair Labor Standards Act was to provide that employees be compensated for their labor at not less than the minimum wage, not to interfere with the methods and practices by which the compensation was paid (Williams v. Jacksonville Terminal Co., supra); and if the employee receives for his labor the minimum which the statute requires, it cannot be important whether he receives it direct from the employer or, with the employer's consent, from the employer's patrons. Plaintiffs cannot blow hot and cold. They cannot say that the service for which tips are received is employment within the meaning of the act and in the same breath deny that the tips, which by agreement are the only compensation for the service, are wages of that employment. Nor can they assert the control of defendants over the relationship for the purpose of bringing themselves under the act and deny that control in so far as it relates to the tips, which they receive because of the relationship.

The recent decision of the Supreme Court in Williams v. Jacksonville Terminal Co., supra, is, we think, directly in point. In that case the railroad notified the "red caps" that it would pay them the difference between the tips received by them and the amount of the minimum wages to which they were entitled under the act. They sued for the amount of the minimum wages without reference to the tips received. In holding that they were not entitled to recover, the Supreme Court said:

"The Fair Labor Standards Act is not intended to do away with tipping. Nor does it appear that Congress intended by the general minimum wage to give the tipping employments an earnings-preference over the non-service vocations. * * * To interpret 'pay-wages' as limited to money passing from the terminal to the red cap would let construction of an important statute turn on a narrow technicality. It, of course, can make no practical

difference whether the red caps first turn in their tips and then receive their minimum wage or are charged with the tips received up to the minimum wage per hour.

"Congress approached the problem of improving labor conditions by the establishment of a minimum wage in certain industries. It required that workers in these industries receive a compensation at least as great as that fixed by the Act. Except for that requirement the employer was left free, in so far as the Act was concerned, to work out the compensation problem in his own way."

Plaintiffs attempt to distinguish this case on the ground that it involved an "accounting and guarantee system" which is not present here. This, however, is, we think, a distinction without a difference. The question there, as here, was whether tips received from passengers should be counted as wages received by the "red caps" for their services, and the answer of the Supreme Court was in the affirmative, using the language above quoted. It is true that in that case there was a notice that the tips received should be kept by the "red caps" and applied against the minimum wage; but here there was an agreement that the tips received should be kept by the "red caps" in compensation of services. So far as the agreement to pay the difference between the tips and the minimum wage is concerned, that agreement added nothing to what the statute already required. In both cases the "red caps" were allowed to keep the tips received by them; and, in both, the question was whether such tips should be credited against minimum wages. The notice in that case, as the court pointed out, did have the effect that, if the "red caps" did not accept the company's proposal as contained in the notice, their services thereafter were those of mere interlopers or volunteers, who would not be required to account for tips and would not be considered employees entitled to minimum wages. Here there was no such notice to put the "red caps" to their election and there is no contention that they were interlopers or volunteers. On the contrary, they admittedly rendered services under an agreement with defendants that they were to have the tips received by them. As these tips did not equal minimum wages, they are entitled to recover the difference with the penalty prescribed by statute; but they may not pocket the

tips received under the agreement and recover the full amount of minimum wages just as though they had received nothing at all. That the amount of tips received should apply against liability for minimum wages is justice and common sense. We think that it is also what a reasonable interpretation of the statute requires.

There was no error, and the judgment appealed from will be affirmed.

Affirmed.