**SCHWING et al. v. UNITED STATES.**

Civil Action No. 4645.

District Court, E. D. Pennsylvania.

March 29, 1946.

Raymond A. White, Jr., of Philadelphia, Pa., for plaintiff.

A. Barr Comstock, Sp. Asst. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

BARD, District Judge.

This action is brought by the taxpayers to recover taxes totalling $559.66, plus statutory interest, assessed by the Commissioner of Internal Revenue under the Social Security Act[1] and the Federal Insurance Contributions Act[2] and paid by taxpayers for the years 1938, 1939, 1940, 1941 and 1942. The assessment was the result of a determination by the Commissioner that the persons, upon whose compensation the taxes were based, were employees of plaintiffs within the meaning of these statutes.

I make the following

Findings of Fact:

1. Plaintiffs John Schwing and Walter F. Schwing are co-partners doing business under the firm name of John Schwing & Son. Plaintiffs have engaged in the business of custom tailoring in Philadelphia, Pennsylvania, for many years and were so doing business from 1938 to 1942 inclusive.

2. On November 18, 1944, the Commissioner of Internal Revenue assessed the taxpayers for certain taxes, with interest, under the Social Security Act and the Federal Insurance Contributions Act for the years 1938, 1939, 1940, 1941 and 1942 in the total sum of $559.66. The assessments were paid under protest by the taxpayers on August 29, 1944.

3. Taxpayers filed a timely claim for refund on September 18, 1944, which was disallowed by the Commissioner of Internal Revenue.

4. The taxpayers' method of doing business was as follows:

When a suit was ordered by a customer, plaintiffs cut the cloth according to a pattern prepared from the customer's measurements. The cloth with the linings and other necessary materials were separated into three bundles, one containing the materials for the coat, another for the vest and the third for the pants. These bundles were given to different journeymen tailors, each a specialist in making coats, vests or pants, who took the bundle to his own shop and basted, and then sewed, the material into a garment. The completed coat, vest, or pants were returned to plaintiffs' establishment and, after fitting and alteration, the complete suit was delivered to the customer. Each journeyman tailor worked on only one type of garment, i. e., coat, vest, or pants.

5. The business arrangement and working agreement between plaintiffs and the various journeyman tailors was as follows:

(a) Plaintiffs supplied the cloth (cut to pattern) and other materials for the particular garment to the tailor.

(b) The tailor assembled the materials into a complete garment.

(c) Each tailor did his work at home or at his shop. None of the work was performed at plaintiffs' place of business.

(d) Each tailor furnished and owned his own equipment, including sewing machines, tables, irons, scissors and other items. None of this equipment was owned by plaintiffs. Plaintiffs did not pay for the rent, light or heat at the tailors' place of work.

(e) Each tailor was paid, on a piece-work basis, at a fixed rate for a completed garment. The tailor received his compensation at the end of each week for the garments completed in that week. The tailors were not guaranteed a minimum weekly compensation.

(f) Some of the tailors employed relatives or strangers to help "finish" the garments. Plaintiffs did not know who they were; they did not pay the helpers; they did not hire or fire the helpers; they did not supervise their work in any way.

(g) Plaintiffs were not required to furnish a specific amount of work to the tailor. The tailor was not required to work solely for plaintiffs and several of the tailors did, in fact, perform similar work for other custom tailors.

[1] Act of August 14, 1935, c. 531, Title VIII, §§ 804, 811, 49 Stat. 637, 639, 42 U.S.C.A. §§ 1004, 1011. Applicable to the year 1938.

[2] Internal Revenue Code § 1410, 1426, 53 Stat. 175, 177, as amended August 10, 1939, c. 666, Title VI, §§ 604, 606, 905(a), 53 Stat. 1383, 1400, 26 U.S.C.A. Int.Rev. Code, § 1410, 1426. Applicable to the years 1939, 1940, 1941 and 1942.

(h) Plaintiffs furnished a ticket with each bundle containing specifications as to the garment such as the number of pockets, type of stitching, and the number of buttons. Plaintiffs were interested only in obtaining a completed garment in accordance with the specifications submitted, tailored and finished in a workmanlike manner. Plaintiffs did not supervise or control the journeyman tailors nor give any mandatory directions to them as to the manner or means of attaining this result.

(i) If the work was defective and not in accordance with plaintiffs' standards, the garment was altered by an employee of plaintiffs who worked at plaintiffs' place of business.

(j) Plaintiffs had the right to instruct the tailors in a general manner as to any phase of their work so that defective work might be avoided.

(k) Plaintiffs assumed the risk of defective work by the tailors. They did not refer complaining customers to the tailors for redress, nor did they deduct anything from their pay for defective work unless the worker damaged the material.

6. Abraham Raskin, a vest-maker, is a journeyman tailor, making vests for plaintiffs under the business relationship described in paragraph five. In addition, he made vests for two other custom tailors whose work he had solicited personally. He sometimes employed a "finisher" to help him.

7. Anthony LaRocca, a coat-maker, is a journeyman tailor making coats for plaintiffs under the business relationship described in paragraph five.

8. Dominic Gazzara, a pants-maker, is a journeyman tailor making pants for plaintiffs under the business relationship described in paragraph five. Gazzara employed his sister to help him and her wages were paid by him and not by plaintiffs.

9. Clementi Iatesta, a coat-maker, is a journeyman tailor who makes coats for plaintiffs under the business relationship described in paragraph five.

10. Plaintiffs were assessed and paid a tax of $559.66 based on the compensation, totalling $22,521.72, paid to the journeyman tailors in 1938, 1939, 1940, 1941 and 1942.

### Discussion.

Section 1410 of the Internal Revenue Code [3] provides as follows: "In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages * * * with respect to employment * * *." Section 1426(a) of the Code defines "wages" as " * * * all remuneration for employment, * * * except * * *," and Section 1426(b) of the Code defines "employment" as " * * * any service, of whatever nature, performed * * * by an employee for the person employing him, * *."

The question to be determined is whether the journeyman tailors were employees of plaintiffs from 1938 through 1942 within the meaning of Sections 1004 and 1011 of the Social Security Act and Sections 1410 and 1426 of the Internal Revenue Code. If, as contended by the Commissioner, the journeyman tailors were plaintiffs' employees, the tax was properly assessed. If, as plaintiffs contend, the journeyman tailors were independent contractors, the assessment was improper and plaintiffs are entitled to judgment in their favor.

Treasury Regulations 106, Sec. 402.-204,[4] promulgated under the Federal Insur-

---

[3] Sections 1410 and 1426 of the Internal Revenue Code, adopted in 1939, incorporate the provisions of Sections 1004 and 1011 of the Social Security Act into the Code and are substantially identical in wording. The applicable sections of the Social Security Act are controlling in the period from 1936 to 1938 inclusive and the applicable sections of the Internal Revenue Code apply thereafter.

[4] "Who are employees.—Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

"Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other characteristics of an employer, but not neces-

ance Contributions Act, sets forth the definition of an "employee" adopted by the Commissioner. The regulation adopts the ordinary construction of the word "employee" as at the common law, namely, that " * * * an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done * * *" and that " * * * if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independant contractor." Although this definition is not binding on the court, it is to be followed unless unreasonable or inconsistent with the statute. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183. The common law definition has been followed consistently by the cases interpreting the Social Security Act and the Federal Insurance Contributions Act. Texas Co. v. Higgins, 2 Cir., 118 F.2d 636; Indian Refining Co. v. Dallman, 7 Cir., 119 F.2d 417; Glenn v. Beard, 6 Cir., 141 F.2d 376; American Oil Co. v. Fly, 5 Cir., 135 F.2d 491, 147 A.L.R. 824; Radio City Music Hall Corporation v. United States, 2 Cir., 135 F.2d 715; United States v. Mutual Trucking Co., 6 Cir., 141 F.2d 655; Spirella Co., Inc. v. McGowan, D.C.W.D.N.Y., 52 F.Supp. 302.

From the testimony adduced at trial, it does not appear that plaintiffs had such control over the means and methods employed by the tailors in assembling a garment or such control over how the tailors were to produce the desired product (i. e., a coat, vest, or pants constructed in a workmanlike manner) as to lead to the conclusion that these journeyman tailors were plaintiffs' employees. Each tailor labored at home or in his own shop and owned his own equipment. The tailors were paid on a piecework basis but were not guaranteed any minimum amount of work each week. The tailors were not restricted to doing work for plaintiffs alone, and several tailors, in fact, did similar work for other custom tailors. Plaintiffs were not interested whether the tailors employed others to produce the garment and several tailors, in fact, paid others to do certain portions of the work. Plaintiffs had no control over the days or hours during which the tailors labored.

It is true that plaintiffs gave the tailors a ticket with each bundle which contained specifications for each garment. But this was merely a description of the result desired, analogous to the blueprint given a contractor under which he is to construct a building. See Kentucky Cottage Industries, Inc. v. Glenn, D.C.W.D.Ky., 39 F.Supp. 642. If a garment did not satisfy the desired standard, plaintiffs had the right to, and did, instruct the tailors in order to avoid such defects in the future. But these instructions were not mandatory, but were merely instructions which the tailors could follow to avoid similar defects. The tailors were specialists, each skilled in the production of a particular garment. It was necessary only to give the tailors cut cloth together with a ticket of specifications, and the tailors returned finished garments without further supervision or control by plaintiffs. Plaintiffs did not desire to control the means or methods of constructing the garment, nor was such supervision necessary.

Defendant urges that plaintiffs had a right to "discharge" the tailors if their work was unsatisfactory. It might be more accurate to say that plaintiffs could refuse to give any more work to a tailor who made unsatisfactory garments. Plaintiffs' right to withhold work from a particular tailor, and the tailor's right to refuse proffered work and to work for other custom tailors was reciprocal. These skilled craftsmen could accept work from whatever source they desired. The mere fact that plaintiffs could refuse work to a tailor who did not produce satisfactory garments does not mean plaintiff thereby had a right of discharge or right to control how the work was to be done. Kentucky Cottage Industries, Inc., v. Glenn, supra.

Plaintiffs did not have the right to control the details and means by which a satisfactory garment was to be produced, did not have the right to "discharge" the tailors, and did not furnish a place to work or tools and equipment. Applying these facts

---

sarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee."

to the definition of "employee" found in the Regulations, I must conclude that the journeyman tailors were not employees of the plaintiffs. Hirsch v. Rothensies, D.C.E. D.Pa., 56 F.Supp. 92.

The Commisioner relies heavily on United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, and Grace v. Magruder, App.D.C. 148 F.2d 679, certiorari denied October 8, 1945, 66 S.Ct. 24. These cases hold that the Social Security Act and the Federal Insurance Contributions Act are primarily remedial in nature, that the purpose of these Acts was to provide old-age unemployment and disability insurance for workers, that these Acts were enacted pursuant to a policy unknown to the common law, and that their applicability must be determined in a manner which will give effect to the intention and purposes of Congress and not under common law principles. These opinions drew their support from the cases interpreting the Fair Labor Standards Act [5] and the National Labor Relations Act [6] which rejected the restricted common law definition of an "employee." National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280; Walling v. American Needlecrafts, Inc., 6 Cir., 139 F.2d 60. The controlling factor in the latter cases, however, was the broad definition of "employ," found in the applicable acts, which includes "to suffer or permit to work." 29 U.S.C.A. § 203(g). In direct contrast with this broad definition, Section 1426(b) of the Internal Revenue Code, applicable herein, restricts the definition of employment and specifically excludes from the definition agricultural workers, domestic servants, federal employees, and many others amounting to almost half of the persons working for compensation in the United States. Senate Report No. 628, 74th Cong. 1st Session, p. 9. Further, Treasury Regulations 106, Sec. 402.204, as quoted in footnote 4, promulgated under the Federal Insurance Contributions Act, adopts the common law definition of "employee" in its strict legal sense. In view of the limited scope of Section 1426(b) of the Code, the common-law definition of "employee" found in the Regulations, and the large majority of cases applying the common-law definition to controversies arising under the Social Security Act and the Federal Insurance Contributions Act, I am unwilling to extend the scope of these Acts, under the doctrine announced in the Vogue and Grace cases, to bring these journeyman tailors within the provisions of the Acts.

Accordingly, I make the following Conclusions of Law:

1. During the years 1938, 1939, 1940, 1941 and 1942, Abraham Raskin, Anthony LaRocca, Dominic Gazzara, Clementi Iatesta, and other journeyman tailors producing garments under similar conditions, upon whose wages the tax was assessed, were independent contractors and not employees of plaintiffs.

2. The assessment of taxes by the Collector of Internal Revenue was improper.

3. Plaintiffs are entitled to a judgment in their favor in the amount of the taxes paid by them under the assessments together with interest.

---

[5] Act of June 25, 1938, c. 676, § 1 et seq., 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

[6] Act of July 5, 1935, c. 372, § 1 et seq., 49 Stat. 449, 29 U.S.C.A. § 151 et seq.