144

EDWARD PADILLA,

*Plaintiff and Respondent,*

vs.

HENNING HOTEL COMPANY,

*Defendant and Appellant.*

(No. 2782; January 7, 1958; 319 Pac. (2d) 874)

For the defendant and appellant, the cause was submitted upon the brief of Brown, Drew & Apostolos and Harden & Harden, of Casper, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief and oral argument of Mr. Leonard E. Lang, of Casper, Wyoming.

Heard before Blume, C.J. and Harnsberger and Parker, JJ.

146

## OPINION.

Mr. Justice HARNSBERGER delivered the opinion of this court.

In 1950 or 1951, plaintiff was employed as a "bellhop" by the defendant hotel company and continued in that service until June 6, 1956. On May 18, 1955, the so-called wage-hour law of this state became effective. Thereafter this action was brought to recover the difference between wages alleged to have been received by plaintiff from defendant after the effective date of the statute and the minimum wage prescribed therein. Judgment was for the plaintiff and defendant appeals.

The broad question presented is whether tips received by an employee may be credited as wages in view of § 2, ch. 121, S. L. of Wyoming, 1955 (§54-1002, W. C.S. 1957 Supp.). However, in this case, the question is narrowed by the facts and findings of the trial court and becomes a query whether a contract, entered into prior to the effective date of the statute and not made in contemplation thereof, stating that the employee would receive "the stipulated monthly salary, plus such tips as plaintiff might receive from others", made the tips a part of the wages required to be paid by the statute.

Section 2, ch. 121, S. L. of Wyoming, 1955, provides: "Every employer shall pay to each of his or her employees, wages at a rate of not less than seventy-five cents per hour."

This statute is of similar import to the Fair Labor Standards Act of 1938, c. 676, § 6, 52 Stat. 1062, as amended 29 U.S.C.A. § 206, and, therefore, the pronouncements of federal courts when construing and applying the Congressional Act, merit our careful attention. The relevant portion of the Act is:

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) not less than $1 an hour; * * *"

Our consideration of the appeal is also delimited by the following findings of the trial court:

"3. That the only contract of employment was the verbal contract made at the time when plaintiff commenced working for defendant, the substance of which was that the plaintiff would work for defendant in its hotel as a bell-hop and would receive the stipulated

monthly salary, plus such tips as plaintiff might receive from others.

"4. That during the period in controversy herein the monthly salary paid to plaintiff by defendant, when added to the tips received by plaintiff in the course of discharging his duties in said employment, exceeded the minimum hourly wage rate specified in Chapter 121, Wyoming Session Laws 1955, but that such tips are not to be included as part of the wages due the plaintiff by reason of his employment under said law."

We might initially say the finding that the tips are

*not* part of wages under the wage-hour law is a conclusion of law rather than a finding of fact, the correctness of which, under the facts found, poses the very question which is vital in this appeal.

In the cases of Williams v. Jacksonville Terminal Co. and Pickett v. Union Terminal Co., consolidated for decision and reported together in 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914, rehearing denied 315 U.S. 830, 62 S.Ct. 909, 86 L.Ed. 1224, the defendant in each case claimed the tips received by its employees should be credited as wages paid by the employer.

In the Williams case, 315 U.S. 392, 62 S.Ct. 664, 86 L.Ed. 922, the defendant issued the following notice to its redcap employees:

" 'In view of the requirements of the Fair Labor Standards Act, effective October 24, 1938, and in consideration of your hereafter engaging in the handling of hand baggage and traveling effects of passengers or otherwise assisting them at or about stations or destinations, it will be necessary that you report daily to the undersigned the amounts received by you as tips or remuneration for such services.

" 'The carrier hereby guarantees to each person continuing such service after October 24, 1938 compensation which, together with and including the sums of money received as above provided, which will not be less than the minimum wage provided by law.

" 'You are privileged to retain subject to their being credited on such guarantee all such tips or remuneration received by you except such portion thereof as may be required of you by the undersigned for taxes of any character imposed upon you by law and collectible by the undersigned.

" 'All the matters above referred to are subject to the right of the carrier to determine from time to time the number and identity of persons to be permitted to engage in said work and the hours to be devoted thereto, to establish rules and regulations relating to the manner, method and place of rendition of such service, and the accounting required.' "

The authorized representative of the redcaps saw the notice and protested the invalidity of the accounting and guarantee, but the employees continued their accustomed activities, made the reports, kept the tips and accepted the sums proffered by the employer. The Federal Supreme Court decided that under the terms of the contract, which arose from the notice given with acceptance evidenced by compliance with its terms, the tips received and accounted for should be credited upon the wages paid by the employer.

In the course of its opinion at 315 U.S. 397, 398, 62 S.Ct. 666, 86 L.Ed. 925, the court said:

"In businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient. (Citing cases.) Where, however, an arrangement is made by which the employee agrees to turn over the tips to the employer, in the absence of statutory interference, no reason is perceived for its

invalidity. The employer furnishes the facilities, supervises the work and may take the compensation paid by travelers for the service, whether paid as a fixed charge or as a tip. * * *"

These statements recognize (1) that tips are not wages, (2) that the parties have a right by explicit contract to agree that tips will be wages and (3) that only when so contracting does the employer become entitled to have tips credited upon wages paid the employee.

In making brief comment upon the significance of the method or plan used to apply tips to wages, when interpreting wages as either including or excluding gratuities, the Court said at 315 U.S. 407, 62 S.Ct. 671, 86 L.Ed. 930:

"To interpret 'pay-wages' as limited to money passing from the terminal to the red cap would let construction of an important statute turn on a narrow technicality. It, of course, can make no practical difference whether the red caps first turn in their tips and then receive their minimum wage or are charged with the tips received up to the minimum wage per hour."

And the court observed that except for the requirement that certain workers should receive a compensation at least as great as that fixed by the Act, the employer was left free to work out the compensation problem in his own way.

Subsequent to the Williams-Pickett cases, Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280, 283, 284, was decided. There, under an agreement entered into in 1939 and after the Act became effective, the redcaps were receiving as compensation only the tips given them by passengers who used defendant's station. The complaint on appeal was that the trial court directed

the jury to deduct from the amount of minimum wages the amount of tips the plaintiffs had received. The Circuit Court of Appeals held this was not error, saying:

"* * * The fact that the tips are received from the passengers rather than from defendants is immaterial, for they constitute the very compensation which it was agreed between plaintiffs and defendants that plaintiffs should receive when they entered upon the service, * * *"

In refusing to agree with the additional claim that the case then before the court was distinguishable from the Williams-Pickett cases, because there was no "accounting and guarantee system", the court said:

"Plaintiffs attempt to distinguish this case on the ground that it involved an 'accounting and guarantee system' which is not present here. This, however, is, we think, a distinction without a difference. The question there, as here, was whether tips received from passengers should be counted as wages received by the 'red caps' for their services, and the answer of the Supreme Court was in the affirmative, using the language above quoted. It is true that in that case there was a notice that the tips received should be kept by the 'red caps' and applied against the minimum wage; but here there was an agreement that the tips received should be kept by the 'red caps' in compensation of services. So far as the agreement to pay the difference between the tips and the minimum wage is concerned, that agreement added nothing to what the statute already required. In both cases the 'red caps' were allowed to keep the tips received by them; and, in both, the question was whether such tips should be credited against minimum wages. * * *"

Other cases in which the Supreme Court ruling was held to be controlling are Moyd v. Atlantic Greyhound Corp., 4 Cir., 170 F.2d 302; Harrison v. Terminal R.

Ass'n of St. Louis, Mo., 8 Cir., 126 F.2d 421; Harrison v. Kansas City Terminal R. Co., 8 Cir., 126 F.2d 422; and Ryan v. Denver Union Terminal Ry. Co., 10 Cir., 126 F.2d 782.

The only decision under a state law coming to our attention is from New York where it appears the minimum wage for women was fixed by mandatory order of the Industrial Commissioner of the State of New York. There waitresses were employed under an agreement that all tips received were to be placed in the employer's custody. These waitresses were guaranteed the minimum wage, but at the end of the week the amounts received from each waitress were totaled, and if such total was greater than the guarantee such sum was paid to the waitress less taxes. If the total was less than the guarantee, the guaranteed amount was paid less the appropriate tax reductions. When it was contended this method violated the minimum wage order of the commission, the Supreme Court of Nassau County, Part I, held to the contrary and gave judgment for the defendant employer. See Alaia v. Roberts, 112 N.Y.S.2d 251.

The Williams-Pickett cases seem definitely to have determined that in the absence of an express agreement to the contrary tips were not wages, and the decisions which followed those cases aligned themselves with that view.

This court has previously recognized and followed the generally accepted rule that where a statute of another jurisdiction is adopted the construction placed upon it by the highest court of that jurisdiction prior to the adopting enactment was also adopted. Blumenthal v. City of Cheyenne, 64 Wyo. 75, 186 P.2d 556. Federal courts have similarly applied that rule, when

passing upon Wyoming statutes which have been taken from other states, providing the statutes were identical, had not theretofore been differently construed by the Wyoming Supreme Court and the construction involved the same question. Huffman v. Buckingham Transp. Co. of Colorado, 10 Cir., 98 F.2d 916; Swafford Bros. Dry Goods Co. v. Mills, 8 Cir., 86 F. 556. Whether this rule should be the same in a case like the present one, where the Wyoming statute is not identical with the Congressional Act, although identical in purpose and substantially the same in meaning, could well be the controlling factor in deciding if tips are wages in the meaning of our statute. At this time, however, it is sufficient to say that we see no reason to disagree with the decision of the federal courts. In consequence, we will follow their holdings on the theory that the federal law is sufficiently similar to our own to render their interpreting decisions very persuasive even though we do not consider them to be controlling.

As was suggested at the outset, for us to merely determine the word "wage" as used in our law either did or did not include tips and gratuities will not be sufficient to decide this case.

Notwithstanding this construction, we are still confronted by the fact that the lower court found the parties reached an agreement as to the salary the bellhop was to receive and we must now decide if this agreement was such "an explicit contrary understanding" relative to tips as that to which reference was made in the Williams-Pickett cases.

It seems clear that in all cases mentioned, both state and federal, the courts were holding that the contract of employment in the matter before them amounted to an explicit understanding that the tips did *not* be-

long to the employee, but on the contrary that they belonged to the employer who by the terms of the contract was electing to use tips in part or complete payment of the wages paid for the service of its employees.

It seems to us that the terms of the contract of employment as set forth in the findings of the trial court fall short of making it the kind of contract to which the federal courts made reference and which was present in the Williams-Pickett cases and in the New York case. In the contract as set forth in the court's finding in this case, there is no requirement for any accounting to the employer for tips received by the employee, or for the turning in of such tips into the employer's custody. Neither does this contract provide a guarantee to the employee that he will be paid the minimum wage at all events. (Although in Southern Ry. Co. v. Black, supra, the court held that was unnecessary inasmuch as the law would have required it.) There is, in addition to these differences, a failure to specify the number of hours of service to be rendered in determining the "stipulated monthly salary". Furthermore, the court's finding leaves uncertain whether the words, "plus such tips as plaintiff might receive from others" mean that such tips are a part of the salary or are intended to express the employer's disclaimer of any right to those tips.

The latter intendment is reconcilable with the trial court's judgment based upon its conclusion that "tips are not to be included as part of the wages due the plaintiff by reason of his employment under said law". The former is not.

We must, therefore, hold that the interpretation to be given this finding of the court is that the above-quoted phrase means only that the employer disclaimed

any right to the tips. See McClanahan v. Woodward Construction Company, Wyo., 316 P.2d 337, 342. In the face of this conclusion we must also hold that the contract of employment, as set forth in the trial court's findings, is not such "an explicit contrary understanding" with respect to tips as will abrogate the rule we have adopted that tips are not wages in the absence of such "an explicit contrary understanding".

The judgment of the lower court is affirmed.

Affirmed.